JOHN TOLSON *vs.* HENRY TOLSON, ET AL.—HENRY TOLSON, ET AL., *vs.* JOHN TOLSON.—*December,* 1849.

The complainant filed a bill claiming the benefit of a trust or charge in his favor, contained in the will of his father. The defendants, the other devisees, demurred to this bill, on the ground that the clause in the will relied on, was too vague and uncertain in its terms, to create such a trust or charge. The chancellor sustained the demurrer, but this court, on appeal, reversed the decree dismissing the bill, and passed a decree remanding the cause, that the court of chancery might refer it to the auditor, with instruction to state an account of the allowance to be made to complainant, under certain directions expressed in the decree of this court. This decree was silent as to the right of the defendants to answer. HELD: that the defendants were not precluded, by this decree, from answering the original bill, and taking full defence upon the merits.

It was not competent to this court to allow the defendants to withdraw their demurrer and answer over, though provision for doing so in the court below, might have been made in their decree.

Upon a second appeal in the same case, this court may look into and decide questions involved in the record previously brought up, not decided upon the former appeal.

The reference in the decree, to the "condition and habits of life of complainant and his father," was intended to allude to the extent of the estate, and their mode of living, as to expensiveness, economy, &c., and not to denote the complainant's condition relative to his wife and children; it was, therefore, error to average estimates of the sum necessary to support complainant, as the head of a family, with estimates of what was necessary for his individual support.

This court, by saying that the entire real estate was chargeable with complainant's claim, did not design to confine the chancellor to any particular mode of securing the complainant the benefit of this lien. There is mani-

fest advantage of adjusting the rights of all parties, and arranging the accounts accordingly.

The widow of one of the defendants can only be chargeable in respect of her dower, and her child only as heir to the father.

A portion of the estate which descended to the complainant, like every other part of the real estate, is to be charged with its proportionate share of the allowance to be made to him; the proper mode of making this charge, is by crediting this share against his claim.

Interest is properly chargeable at the expiration of a year, if any balance of the allowance then remains due.

Cross-appeals from the *Court of Chancery.*

The original bill was filed on the 12th of March, 1834, by *John Tolson,* and *Eleanor,* his wife, and their adult and infant children, against *Henry, Edward, William, Alfred, Thomas, Alexander,* and *George Tolson,* the other heirs at law and devisees of *Francis Tolson,* deceased, and states, that the said deceased, by his last will, devised his estate to and amongst his children, other than the complainant *John,* and requested his other sons to take care of their brother, the complainant *John,* and his family, which said request created a trust in, and imposed a duty on said other sons, to provide for the said *John* and his family, a comfortable support and maintenance during their lives. That said sons have received large estates under the provisions of said will, but have failed to provide for the complainants; and that the amount which they, the complainants, have received for each or any year, has not exceeded $60, and it prays, that the said sons may be required to pay to the complainants an equivalent for their subsistence from the time of the testator's death, and also to provide for their future support.

The clause in the will of *Francis Tolson,* supposed to create this trust, after devising all the residue of his estate to his seven sons, the defendants, proceeds: "I request my seven sons, above named, to take care of their brother, *John Tolson,* and his family; also the children of my late granddaughter, *Ann Middleton,* and my grandson, *Arthur C. Callis.*"

To this bill the defendants demurred, and the chancellor, (BLAND,) on the 17th of April, 1837, being of opinion, that

48    v.8

the request of the testator in favor of his son, *John Tolson*, *and his family*, is so indefinite and uncertain, that it cannot be considered as the foundation of any trust or claim, as set forth in the bill, sustained the demurrer, and passed a decree dismissing the bill.

From this decree the complainants appealed, and the Court of Appeals, at December term, 1838, reversed the decree of the chancellor, and, on the 16th of February, 1839, passed the following decree:

"The proceedings in this case being read and considered by the court, it is thereupon adjudged, ordered and decreed by the authority of this court, that the decree passed by the chan-cellor in this case, be and the same is hereby reversed, and the said cause is hereby remanded to the chancery court, that the same may be referred to the auditor of that court, with instruc-tions to state an account from such proof as may be adduced before him, ascertaining what sum it would be proper to allow for the complainant, *John Tolson*, per annum, as and for a maintenance and support, dating from the day of the death of his father, *Francis Tolson*, the testator in the proceedings in said cause mentioned, regard being had, in making such ascer-tainment, to the conditions and habits in life of the said testator and the said *John Tolson*, and also to the value of the property devised and bequeathed by the said father to the defendants. It is further adjudged, ordered and decreed by the authority aforesaid, that after the report of the auditor, as aforesaid, the chancery court shall pass a decree, directing the payment to the said *John Tolson* of such sum as the said court may deem proper to be allowed him, for his support, &c., from the death of the said *Francis Tolson* to the date of said decree; and shall further decree the payment of such sum annually there-after, as the said court may think a fair support for the said *John Tolson*. And it is hereby further adjudged, ordered and decreed, that the sum which may be allowed to the said *John Tolson*, from the death of his father to the date of the decree, as aforesaid, and also the annuity which may be decreed him to be paid annually thereafter, as aforesaid, shall be a charge

upon the entire real estate devised by the said *Francis Tolson* to the defendants, and that said real estate shall be answerable therefor."

This decree was signed by STEPHEN, ARCHER and CHAMBERS, J., and the opinion of the court on said appeal is reported in 10 *Gill and John.*, 159.

The cause was reinstated in chancery on the 22nd of April, 1839. The death of *Alfred Tolson* was suggested on the docket, and the surviving sons, *Henry, Edward, William, Thomas, Alexander,* and *George Tolson,* filed their petition, asking leave to file answers to the bill, stating, that the demurrer was filed by consent, and for the especial benefit of the complainants, in order to save their costs, and enable the court to decide, in the cheapest and most expeditious manner, the true construction of the will of the deceased, and was never intended to deprive the defendants of the payments and equitable offsets they had to the claim. They filed likewise an affidavit, that *Alfred Tolson* died about the 7th day of April, 1837, leaving a widow, *Elizabeth Tolson,* and one child, *Wilhelmina Tolson,* a minor.

On this petition the chancellor, by order, passed 1st May, 1839, declares, that the cause was abated by the death of one of the parties, " and that no further proceedings can be had therein, until it has been regularly revived by a bill of revivor. And it is clear, that so much of the petition as prays for leave to answer must be rejected, because the chancellor can, in no respect, vary or depart from the terms of the decree of the Court of Appeals, which does not intimate, that the defendants are to be allowed to answer." He therefore dismisses the petition.

On the 22nd of July, 1840, *John Tolson* filed his bill of revivor against the widow, and only child and heir at law of *Alfred Tolson,* who, in their answers thereto, allege, that the devisees of said *Francis Tolson* have, since his death, made large advances to complainant for his maintenance; that he and his family have always occupied, free from rent, a very good farm, belonging to the estate of the testator, worth about

$200 per annum, and insist, that an account should be taken of these advances, and that the whole real estate of the deceased, some of which has been sold, is chargeable with whatever may be decreed to complainant.

The complainant excepted to these answers, because they attempt to make defence to the merits of the case, as stated in the original bill, when they ought to be confined to the matters stated in the bill of revivor. The chancellor sustained the exceptions by an order, passed 9th July, 1842; and, by an order passed 25th July, 1842, referred the cause to the auditor for an account, as directed by the decree of the Court of Appeals.

On the 11th of July, 1843, the auditor made his report, in which he allows the complainant for his support, from 1st January, 1825, (the day of the death of *Francis Tolson,*) to 1st July, 1843, at the rate of $250 per year, reducing that sum, by $60 per year, from 1st January, 1825, to 1st January, 1834, according to the admissions of the bill. The sum made over to complainant by the account, is $6,084.41. The defendants excepted to the report, and filed a petition for leave to take further testimony. In this petition, they suggest the death of some of the original parties, and the insolvency of others.

On the 10th of November, 1843, the cause was ordered to stand over, with leave, by an amended or supplemental bill, to introduce such new matter as may have arisen out of, or been occasioned by, the death or insolvency of some of the parties, and to make such other persons parties, as may be deemed necessary and proper.

A bill of revivor and supplement was accordingly filed, suggesting, that *Thomas H. Tolson,* who had been named as a defendant to the original bill, and in whose name a demurrer thereto had been filed, died prior to the filing of the bill, intestate, and without issue; and that under the limitations contained in the will of the testator, *Francis Tolson,* the estate of *Thomas* had devolved on his brothers, named as parties to the original bill, and that they were in actual possession and enjoyment of that estate when the bill was filed. That *Wihel-*

*mina Tolson* had died intestate, and without issue, and her interests had devolved on persons named as her heirs at law; and that *Edward Tolson* had applied for the benefit of the insolvent laws, and *William H. Tuck* had been appointed his permanent trustee; and that some of the defendants were non-residents.

*Henry, William, George S.*, and *Alexander H. Tolson*, answer and admit the deaths of *Thomas R.* and *Wihelmina Tolson*, as stated in the bill, and say, that *Edward Tolson's* share of his father's estate is now held and owned by *Henry Tolson*. They also aver, that *John Tolson*, the complainant, has received a reasonable support from them.

*William H. Tuck* answers and admits, that he is the trustee of *Edward Tolson*, but denies that he has ever received any portion of his estate. He claims that part of the estate of *Wihelmina Tolson*, which descended from her to *Edward Tolson*.

On the 6th of November, 1844, a decree, *pro confesso*, was passed, after order of publication duly published, against *Edward Tolson* and *George Semmes*, and *Mary*, his wife, the non-resident defendants.

*Horatio Edelen*, and *Eleanor*, his wife, answer and say, they have sold their share of the estate of *Wihelmina Tolson* to *Alexander H. Tolson*, and therefore disclaim all interest in this suit. But if they are accountable, they insist on all the defences taken in the answer of *Henry Tolson* and others.

On the 8th of January, 1846, it was agreed, that an appearance shall be entered for the non-resident defendants, and that they shall have the benefit of every defence they could take, if they had filed answers similar to the answer filed by *Edelen* and wife; that a general replication be entered, and the cause sent at once to the auditor for an account, and an order was passed accordingly.

Depositions were then taken on both sides, the substance of which sufficiently appears from the exceptions of the parties and reports of the auditor.

Complainant excepted to so much of the testimony as goes to show any greater yearly profits to the complainant, down to

the filing of the bill, in 1834, than the sum of $60, admitted in the bill.

On the 5th of March, 1847, the auditor made a further report, accompanied by two accounts. In account A, he assumes that complainant, as the head of a family, ought to be allowed $225 per annum, that he was maintained at the cost of defendants, up to 1st January, 1830, and subsequently received an equivalent to the amount of $60 per year. The sum made due on these principles, 1st March, 1847, is $4,280.22. In account C, he assumes that the proper allowance to be made him, as a single man, ought to be $175 per annum, and then adopting the other principles assumed in account A, the sum ascertained to be due, is $2,005.39.

The complainant excepted to the report and accounts on the grounds: 1st. That the reasonable allowance for his support, ought to have been $250 per annum. 2nd. That this allowance ought to date back from the 1st January, 1825, the day of the death of the testator. 3rd. That no deduction should be made from the above allowance, beyond the sum of $60 per year. And 4th. That no deduction, whatever, should be made from the time of the filing of the bill.

The defendants, by their exceptions, insist in substance: 1st. That the complainant was maintained by them sufficiently, and no allowance, whatever, ought to be made to him. 2nd. That the allowance made him by the auditor, is excessive, and the principles assumed in ascertaining that allowance, are erroneous. 3rd. That the liability of the several devisees of *Francis Tolson*, deceased, is several, and should be proportioned according to the values of their respective estates, and not joint, as assumed by the auditor.

The cause was submitted on these exceptions, and the chancellor (Johnson,) passed an order, dated 14th of June, 1847, referring the case again to the auditor, with instructions to state an account, in conformity to the views expressed in the following opinion:

"The Court of Appeals decided, in this case, that the devise in the will of *Francis Tolson*, so far as regarded the family of

his son, *John*, failed for uncertainty, but that this did not affect the devise to *John;* and in the decree passed in February, 1839, it was ordered that the cause be remanded to this court, that an account might be taken upon proof to be adduced before the auditor, for the purpose of ascertaining what sum it would be proper to allow, *per annum*, for the support and maintenance of the said *John*, dating from the day of the death of the testator, regard being had in making such ascertainment, to the condition and habits in life of the testator, and his son, *John*, and also to the value of the property devised by the father to the defendants. It was further decreed, that the sum which may be allowed said *John*, from the death of his father to the date of the decree, and also the annuity which may be decreed to be paid him thereafter, shall be a charge upon the entire real estate devised by the testator to the defendants, and that the said real estate shall be answerable therefor.

" The cause was accordingly remanded, and comes now before this court, upon exceptions to the report of the auditor, made in conformity with the decree of the Court of Appeals. In the bill which was filed in March, 1834, it was stated, that the complainant, *John Tolson*, had received, for each year since the death of the testator, from his devisees, an amount not exceeding $60 *per annum*, but that they now (that is, at the period of filing the bill,) refuse to give him anything. This bill was demurred to, and there is no evidence that the defendants, or any of them, have ever made *John Tolson* any allowance since it was filed. There is evidence, however, that *John Tolson*, from the period of the death of his father, up to the year 1829, occupied and worked a farm devised by the testator to his son, *George*, from which time, for three or four years, he cultivated the same farm on shares, with one of the other sons, and that, from the latter period, until December, 1845, when he left the State, he lived on other portions of the estate left by the testator.

" Looking to the opinion and decree of the Court of Appels, the chancellor thinks that the true test in determining the amount of the allowance to be made to *John Tolson*, is his condition

and habits, and the value of the estate devised by the testator to the defendants, his seven sons. The testator, no doubt, intended that the request which he made of his seven sons, should go beyond the mere taking care of his son, *John.* They were to take care of him and his family; but the uncertainty of the term "family," rendered that part of the will void, and the duty of the seven sons is restricted to the maintenance and support of *John, alone.* In my opinion, the nearest approximation which can be made to the amount which shall be allowed for the support of *John Tolson,* will be attained by making an average of the testimony of all the witnesses who have testified upon the subject, as well those who speak of him as the head of a family, as those who testify to what it would cost to support him as a single man.

"I am also of opinion, that if, from the death of the testator, in 1824, the evidence shows, that *John Tolson* was in possession and use of property left by the testator, equivalent to his support, that no further allowance is to be made him during the period of such possession and use, as it must be presumed that the Court of Appeals did not mean to give him more than a support, or to give him that of which he had been already in the enjoyment. I am further of opinion, that the credit of $60 *per annum,* is to stop with the filing of the bill, unless it be shown, by the proof, that it was paid to *John Tolson* subsequent to that period, unless he received some equivalent advantage.

"In ascertaining the amount of the benefit enjoyed by *John Tolson,* from the possession and use of property left by the testator, the auditor will make an average of the testimony, including *Mary Ann McPherson.* The evidence in relation to the value of the estate devised and bequeathed by the testator to the defendants, is somewhat indefinite, but the chancellor, nevertheless, thinks, that upon a fair construction of it, and especially of the proof of *Thomas Berry,* returned on the 11th of July, 1845, that sufficient *data* may be found, upon which such an account as is contemplated by the Court of Appeals, may be stated. The Court of Appeals having decided, that the

sums which shall be allowed *John Tolson*, from the death of his father to the date of the decree, and also the annuity which may be decreed to be paid him annually thereafter, shall be a charge upon the entire estate devised to the defendants, and that said real estate shall be answerable therefor, the chancellor thinks that the entire estate is liable for the entire sum *in solido*, and that, consequently, there is no necessity for an account charging each devisee for his proportion, however convenient such an account might be, for the adjustment of the affairs of the defendants *inter sese*. The chancellor also thinks, that the said defendants are chargeable with interest on the balance due for each year, as stated in former reports of the auditor."

On the 7th December, 1847, the auditor made his final report. He assumes, upon the testimony of *Mary Ann McPherson*, that up to the year 1835, the complainant had received a full equivalent for his support; next, by bringing her testimony which estimates the value of those advantages at $250 to $300, with that of *Middleton*, who estimates them at $80 or $90, and with that of *Cæsar A. Gantt*, who estimates them at $25, the average from 1835 to 1838, is adjusted at $126.66⅔ per annum, and from 1838 to 1845, at $182.50 per annum, and lastly, that the proper allowance to be made for complainant's support, would be $197.50 per annum; upon these principles, the sum ascertained to be due on the 1st of December, 1847, is $908.17.

The defendants excepted to this report on the grounds: 1st. That the testimony of *Mary Ann McPherson* ought not to have been brought into average with that of *Middleton* and *Gantt*, they testifying to different subjects. She proving that the advantages and privileges which complainant received from defendants, were worth $250 or $300. Whereas the latter testify only as to the value of the land complainant held of defendants. 2nd. That said testimony of *Miss McPherson*, standing alone, would show that nothing ought to be allowed to the complainant for his support. 3rd. That the allowance made him by the auditor, is excessive, and is not warranted by the testimony.

49　　v. 8

The complainant again excepted to the admissibility of all the evidence offered, for the purpose of showing that the complainant had been supported, in whole or in part, by the defendants; and also to the auditor's report: 1st. Because founded on such inadmissible testimony. 2nd. Because the auditor has given undue weight to the testimony of *Mary Ann McPherson.* 3rd. For the reasons stated in the exceptions to the former report.

The chancellor, by his decree, passed 10th of February, 1847, ratified the auditor's report, and directed the defendants to pay to the complainant the sum ascertained, by the auditor, to be due to him for arrears, and also the further sum of $197.50, in half yearly payments, commencing on the 1st December, 1847, and continuing during his life.

Both the defendants and the complainant appealed from this decree.

The cause was argued before DORSEY, C. J., CHAMBERS, MAGRUDER, MARTIN, and FRICK, J.

PRATT and ALEXANDER, for complainant, insisted:

1st. That the decree of the Court of Appeals, already passed on the former appeal, and which gives law to this case, entitles him to recover an adequate allowance for his subsistence, from the time of the death of *Francis Tolson,* the testator, to the time of the final decree to be passed in this cause, subject only to a deduction therefrom to amount of $60 per year, from the time of the testator's death, to the time of filing the bill, and that, under said decree, evidence is admissible only for the purpose of showing what would be an adequate allowance for subsistence, irrespective of any payments or allowances which may have been made to the complainant.

2nd. That as said decree directs that, in making the allowance to the complainant, due regard is to be had to his condition and habits in life, it is concluded that the allowance must have respect to the fact, that he is, and was, at the time of the

testator's death, a father of a young family, dependent on him for subsistence.

3rd. That if evidence is admissible for the purpose of showing that the complainant was subsisted for any time, entirely or in part, to a greater extent or value than is admitted by the bill, the deductions made from the testimony in the record, by the auditor, are erroneous; and on this point he will especially insist, that the testimony of *Mary Ann McPherson* ought to have been excluded, because of its extravagance.

4th. That the aforesaid decree of this court has established, that the subsistence to be provided for the complainant, is charged upon all the real estate of the testator *in solido.* The chancellor ought, therefore, to have passed a formal decree, expressly declaring, that said real estate is chargeable with the arrears now due the complainant, and the further sums which may become due, and ought to have provided for a sale of said lands, or for an application of the rents and profits thereof to the payment of the sums due, and to become due to the complainant.

Tuck and Randall, for defendants, contended:

That the decree of the chancellor was erroneous, so far as it overruled their exceptions to the auditor's account, which they insist were well taken, and which constitute their points as appellants.

2nd. As appellees, the defendants insist, that the order of the chancellor, of the 10th of February, 1848, was correct in overruling the exception of the complainant to the auditor's account.

Chambers, J., delivered the opinion of this court.

The argument in this case has proceeded chiefly on the ground, that the decree heretofore made by this court was of a conclusive character, not only in regard to the general question of complainant's right to recover, but as to the details and amount to be allowed him, and the particular rules by which the auditor was to be controled. In short, that the defendants

in the bill were thereby precluded from making any defence upon the merits. It is obvious, that if such a construction be given to our former decree, as to deprive the defendants of the privilege of showing, that the requisitions of the will have been in whole or in part complied with, and to enforce a contribution for the complainant's support, when they have in fact previously made that contribution, injustice must be done.

As this court would most unwillingly occasion such injustice, so will it exert every legitimate authority to prevent its infliction. We are quite willing to admit, that the language of our former decree might and should have been more carefully considered, but we think a fair interpretation of it will not preclude the just claims of the defendants to make a full defence upon the merits. The bill was filed upon the hypothesis, that by the legal effect of the will, *John Tolson* and *John Tolson's* family, were entitled to a maintenance out of the estate of the testator. The defendants assumed the theory, that the bequest was altogether void, so that it conveyed no interest to *John Tolson* or to his family. To avoid the labor, time and expense of ascertaining whether the devisees of the testator had complied with the terms of the bequest, as construed by the complainant, an agreement was filed to the effect, that for this purpose—that is to try the rights of complainant in the most summary way—a demurrer to the bill should be filed. This brought the general question of the effect of the bequest before the late chancellor, who decreed, that the bequest was void for uncertainty. Upon an appeal to this court, that decree was reversed, this court being of opinion, that so far as a maintenance to *John* was directed by the will, it was sufficiently certain, but that as to the family, it was void. The object of the agreement was then gratified, and the parties became informed of their rights under the will. It was not competent in this court to allow the defendants to withdraw their demurrer and answer over, although provision for doing so in the court below might have been made in the decree. The decree given by this court was, in its terms, calculated to afford the relief to which the allegations of the bill entitled the com-

plainant, those allegations being in the posture of the case as it then stood admitted by the demurrer, and although it would have been more regular to have ordered the case to be returned to the chancery court, with the privilege to the defendants to answer to the merits, if they chose to avail themselves of their privilege to do so, yet it does not follow, that such right was taken away by any thing in our decree. Upon the question, whether that right might be exercised after the case was again in the possession of the chancellor, the decree is silent, and for that reason, is within the case of *Duvall and The Farmers Bank*, 9 *G. & J.*, 32, in which it was held, "that upon a second appeal in the same case, this court may look into and decide questions involved in the record previously brought up, when a decision of those questions was not made upon the former appeal." We think, therefore, that the chancellor was in error by the order of 1st May, 1839, rejecting the petition which the defendants preferred, asking leave to answer fully upon the merits; and also by the order of 9th July, 1842, ruling the exceptions to the answer good, on the ground that the defendants were not at liberty to answer to the merits of the case stated in the original bill.

The decree of this court was express on the point, that a maintenance to *John Tolson*, as an individual, was secured by the will, and the reference to the "condition and habits of life" of *John Tolson* and his late father, was intended to have allusion to the extent of the estate and to their mode of living, so far as its expensiveness or economy were concerned, and the practice and habits, in this respect, of the persons with whom they associated. It will readily occur, that where a man of very large fortune, whose habits of life have been luxurious, and who has indulged his children in the most expensive style of dress, and other items of habitual gratification, provides for the maintenance of a child, whose misfortunes or infirmities of character make him unfit to be trusted with the possession of a distributive portion of his estate, a larger annual expenditure would be proper and, indeed, necessary to his comfort, than in a case differing in all respects, so far as wealth,

and luxurious or expensive habits of living were concerned. A man may be comfortable, with plain fare and plain dress, who has always been accustomed to them, while to another, who has always indulged in a contrary practice, and whose associations are with those of similar habits of indulgence, it would be anything but comfort to be reduced to the same kind of economy. The terms were employed in the decree in the sense here expressed, and not as denoting his condition relatively to his wife and children, and servants; and the extent or value of the estate of the testator, was considered a proper element in the estimate of a reasonable allowance, as it cannot be inferred, that with a family of seven other sons and two daughters, it was his design to give the whole, or a very large proportion, of the profits of his entire estate to the maintenance of one son, to whom he did not deem it prudent to devise any portion of his estate.

The opinion of the present chancellor, as expressed in his order of the 14th June, 1847, gives a very proper interpretation to the decree of this court, except in the particulars about to be mentioned. The first is, that he allows the testimony which had been given, as to the sum necessary for the maintenance of the complainant, regarded as "the head of a family," to enter into the average with the estimates of what was necessary for his individual support; and, again, he seems to consider the decree of this court as requiring the charge to be made *in solido*, and not distributively amongst the several defendants. The court did not design, by saying the entire real estate was chargeable, to confine the chancellor to any particular mode of securing to the complainant the benefit of the lien, but only to announce the opinion that a lien was created. Being of opinion with the chancellor, that there are manifest advantages in adjusting the rights of all the parties definitely, there appears to us great propriety in arranging the account accordingly. By the terms of the act of Assembly, we are bound, while the case is before us, to correct any errors throughout the progress of the cause which are complained of on the appeal, and we must, therefore, reverse the several orders before mentioned,

and allow the case to be returned to the chancery court, to permit the defendants, if they find it necessary to do so, to answer fully to the bill, on such terms as the chancellor, pursuant to the practice of the court, may prescribe, and for such further proceedings as the nature of the case and justice to the respective parties may require.

As some points of detail have been argued, it may avoid future litigation on them to say, that we are of opinion, that the complainant's portion of the land derived to him by inheritance from *Wilhelmina Tolson*, is chargeable, as every part of the real estate is, with its proportionate share of the allowance, and we think the most effectual mode of imposing the charge, would be by crediting this aliquot part against his claim, and thus reducing the amount chargeable to the owners of the other portions.

*Martha E. Tolson*, the widow of *Alfred*, can only be chargeable in respect of her dower, and her child only as heir to the father, *Alfred Tolson*.

Interest is properly chargeable at the expiration of the year, if any balance then remains due, according to the principle, in that respect, adopted by the account, which was confirmed by the chancellor.

CAUSE REMANDED

UNDER ACT OF 1832.