[No. 12315. In Bank. — September 22, 1888.]

LEE PEEK, BY JERRY McNEW, HIS GUARDIAN, RE-
SPONDENT, v. NETTIE A. PEEK, APPELLANT.

STATUTE OF FRAUDS — PART PERFORMANCE — MARRIAGE. — Marriage is not
    of itself part performance of a parol contract to convey real property,
    in consideration of the marriage, sufficient to take the case out of the
    statute.
ID. — FRAUD. — But if the marriage was brought about by a fraudulent con-
    trivance, as by a promise to have the conveyance executed, and the
    evasion of such promise by false representations, a court of equity will
    decree a conveyance. Instance.
ID. — GRANTEE WITHOUT NOTICE OF THE FRAUD — VOLUNTEER. — If the
    husband, at the time of the marriage, conveys the property to his minor
    child without consideration, the child cannot retain the property on the
    ground that it was not a party to the fraud.
ID. — WHAT IS NOT CONSIDERATION — DEBT FROM GUARDIAN TO WARD. —
    The money which the father owed the child, as his guardian, does not
    constitute consideration for the deed, in the absence of any consent by
    the child, or sanction by the probate court, to such a disposition of the
    debt.
ID. — MORAL OBLIGATION. — The fact that the father had promised the
    mother of the child upon her death-bed that the child should have the
    property constitutes a mere moral obligation, and is not consideration
    for the deed.
ID. — EQUITABLE INTEREST OF THE MOTHER OF THE CHILD IN THE PROP-
    ERTY — RESULTING TRUST — RIGHT OF THE CHILD AS HEIR OF HIS
    MOTHER. — If the mother furnished a portion of the money with which
    the property was originally purchased, a trust resulted to her as to a
    corresponding portion of the property; and the child could claim as heir
    of his mother as to whatever portion she was entitled to. But such in-
    terest is not a consideration for the deed.

APPEAL from a judgment of the Superior Court of
San Bernardino County, and from an order refusing a
new trial.

The facts are stated in the opinion.

*Rowell & Rowell, Harris & Allen,* and *Wells, Van Dyke
& Lee,* for Appellant.

The residence of the defendant upon the land was a
sufficient part performance of the antenuptial contract
to take it out of the statute of frauds. (Pomeroy on

Specific Performance of Contracts, sec. 115, and cases cited.) The marriage of the defendant was a sufficient consideration for the contract (Wait on Fraudulent Conveyances, 295; *Prewit* v. *Wilson*, 103 U. S. 22; *Magniac* v. *Thompson*, 7 Pet. 346); and coupled with the possession of the property, took the agreement out of the operation of the statute of frauds. (Pomeroy on Specific Performance of Contracts, sec. 134; *Taylor* v. *Beech*, 1 Ves. 297; *Neale* v. *Neales*, 9 Wall. 1; *Ungley* v. *Ungley*, L. R. 4 Ch. D. 73; *Hammersley* v. *De Biel*, 12 Clark & F. 64; *Gough* v. *Crane*, 3 Md. Ch. 119.) The conveyance of the property made by L. P. Peek, ón the eve of his marriage, to his infant son, was a fraud against the defendant. (*Kelley* v. *McGrath*, 70 Ala. 75; *Beeckman* v. *Montgomery*, 14 N. J. Eq. 106; 80 Am. Dec. 229; *Littleton* v. *Littleton*, 1 Dev. & B. 327; *Leach* v. *Duvall*, 8 Bush, 201; *Petty* v. *Petty*, 4 B. Mon. 215; 39 Am. Dec. 501; 2 Pomeroy's Eq. Jur., sec. 961; *Cory* v. *Gertcken*, 2 Madd. 40; *Wright* v. *Snowe*, 2 De Gex & S. 321; *Hannah* v. *Hodgson*, 30 Beav. 19.)

*H. C. Rolfe*, for Respondent.

HAYNE, C.—Ejectment, with a cross-complaint by defendant praying for a conveyance of the legal title. The facts are as follows:—

One L. R. Peek orally promised the defendant that if she would marry him he would, on or before the marriage, convey to her the property in controversy. She relied upon this promise, and married him "for no other reason or consideration." The conveyance was not made. He put it off by excuses and protestations, and on the morning of the marriage, without the knowledge of defendant, conveyed the property to his son by a former marriage, who was then a boy about ten years old. The marriage with defendant did not prove a happy one, and after a year's residence upon the property, Peek deserted

the defendant, and the son, Lee Peek, brought the present action to recover possession of the property. The court below gave judgment for the plaintiff, and the defendant appeals.

The foundation of the defendant's claim being the promise of L. R. Peek, the first question to be considered is whether such promise was of any validity. It is clear that it was within the statute of frauds. But it is contended that there was such part performance and fraud as would induce a court of equity to give relief, notwithstanding the statute.

We think that if the actual fraud of L. R. Peek be left out of view, there was no such part performance as would take the case out of the statute. There may undoubtedly be cases of a part performance of oral antenuptial agreements sufficient to warrant their enforcement in equity. (See *Neale* v. *Neales*, 9 Wall. 1.) But it seems to be generally agreed that the marriage alone does not amount to such part performance. (See Atherly on Marriage, p. 90; Browne on Statute of Frauds, 4th ed., sec. 459; *Henry* v. *Henry*, 27 Ohio St. 121.) With reference to this subject, Story says: "The subsequent marriage is not deemed a part performance, taking the case out of the statute, contrary to the rule which prevails in other cases of contract. In this respect it is always treated as a peculiar case standing on its own grounds." (1 Story's Eq. Jur., sec. 768.) Nor does the fact that the defendant resided with her husband upon the property make any difference. The reason assigned for holding possession to be part performance is, that unless validity be given to the agreement the vendee would be a trespasser. But it is manifest that this reason would not apply where the vendor was the husband, and the vendee the wife, living with him upon the property. The possession which is referred to by the cases which hold it to be sufficient part performance is a possession exclusive of the vendor. (Browne on Statute of Frauds, 4th ed., sec. 474.)

But the fact that the marriage was brought about by the actual fraud of L. R. Peek seems to us to make a difference. There can be little doubt upon the record that there was actual fraud on his part. He denies that he made any promise to convey the property in controversy. But the court finds that he did make it, and taking this to be the fact, we think that the defendant's account, as to the time of the promise and of the reason she married him without the conveyance, must be accepted as the true one. According to her testimony, the promise was repeated up to the time of the marriage, and she was induced to have the ceremony performed before the conveyance was executed by means of excuses and protestations which must have been made for the purposes of deceiving her. On the day before the marriage he pretended that he was going to have the deed executed at once. He said to the defendant: "The officers are in town that are required to draw up the papers. Come to-night and I will have the place deeded to you, and the fifteen thousand dollars put in your name. He left me in the hotel, and in a few minutes he came and told me that Mr. Frank McKenny was out of town, and it could not be attended to that evening." The next day "he said he would have the deeds drawn, and he went up and said that they were all busy at the court-house, and he could n't have it done at that time, and he called on me again with the same story,—that the gentlemen at the court-house were busy, and that he could not have the deeds fixed, and that I could rest contented." He, however, succeeded in inducing the defendant to marry him that evening, by protesting that the papers should be executed as soon as practicable. After the marriage he kept up for a short time the pretense that he was going to fulfill his promise, but never did so.

It seems clear that he never intended to have the deed executed. The story that he could not have it done because the officers at the court-house were busy is ridic-

ulous. On the very day that he was making this excuse, he got a deed executed, conveying the property to his son. And the fact that he induced the defendant to marry him by promising to convey the property to her, when at that very time he was conveying it to somebody else, seems conclusive as to his fraudulent intent. We think, therefore, that the conclusion of the court below that the deed was not made "with any fraudulent intent whatever" is not sustained by the facts.

This fraud on the part of L. R. Peek, by which he induced the defendant to irretrievably change her condition, seems to us to be ground for relief in equity. It has been laid down that if the agreement was intended to be reduced to writing, but was prevented from being so by the fraudulent contrivance of the party to be bound by it, equity will compel its specific performance. (1 Story's Eq. Jur., sec. 768; Atherly on Marriage, 85.) And the recent case of *Green* v. *Green*, 34 Kan. 740, 55 Am. Rep. 256, is exactly in point. In that case a widow, owning 160 acres of land, orally promised a man that if he would marry her she would devote the proceeds of the land to their joint support. Relying upon this promise he married her, but subsequently ascertained that on the eve of the marriage she had conveyed the property to her children by former marriage, "in consideration of love and affection." The court held that he could maintain an action to have the deed set aside on the ground of fraud. (Compare also *Petty* v. *Petty*, 4 B. Mon. 215; 39 Am. Dec. 501.)

We do not say that the mere fraudulent omission to have an agreement reduced to writing would of itself be ground for specifically enforcing the agreement. But where the fraudulent contrivance induces an irretrievable change of position, equity will enforce the agreement. And the marriage brought about by the fraudulent contrivance is a change of position within the meaning of the rule. In *Glass* v. *Hulbert*, 102 Mass. 24, 3 Am. Rep.

418, in reasoning upon somewhat different facts, to the conclusion that, in order to be ground for the enforcement of the oral contract, the fraudulent contrivance must have induced some irretrievable change of position, the court said: "The cases most frequently referred to are those arising out of agreements for marriage settlements. In such cases the marriage, although not regarded as a part performance of the agreement for a marriage settlement, is such an irretrievable change of situation, that if procured by artifice, upon the faith that the settlement had been made, or the assurance that it would be executed, the other party is held to make good the agreement, and not permitted to defeat it by pleading the statute." This, we think, is a correct statement of the law.

It is argued, however, that the plaintiff knew nothing of the fraud, and therefore is not affected by it. But it is very clear that a mere volunteer, however innocent, cannot retain the fruits of the fraud. And we think that with reference to at least a portion of the property, the plaintiff was a mere volunteer. There are two grounds upon which it is urged that he was a purchaser for valuable consideration. In the first place, it is said that his father was his guardian, and as such owed the plaintiff a balance of $148, and that this sum was part of the consideration of the deed. But there was no consent of the ward to such an application of the sum due him. His testimony is as follows: "I never paid my papa any money for the deed that he showed me. I do not know anything about how much money was mentioned in the deed as being the consideration for it. I never knew anything about that. Nothing of that kind passed between us. No property, or money, or anything. I did not have any property at that time to give him. If I had any, I didn't know it." So that, even if the ward could have consented to such an appropriation of his funds, without the sanction of the probate court,

there was no such consent. Nor was there any sanction of the probate court. It may be that upon a proper settlement of the guardian's accounts a much larger sum will be found to be due from him. He cannot get rid of liability to his ward in that way.

In the next place, it is said that L. R. Peek promised his first wife, upon her death-bed, that the son should have the property. But it is clear that such promise was a mere moral, and not a valuable, consideration. It did not prevent the plaintiff from being a volunteer. (See generally *Lloyd* v. *Fulton,* 91 U. S. 484, 485.)

Finally, it is argued that the first wife furnished half of the money with which the property was purchased, and that a trust resulted to her in consequence. This was the view taken by the trial court. But conceding that a trust did result, it did not affect the whole property, but at most only a portion corresponding to the proportion of the price which she furnished. And the portion which it did affect was in no sense a consideration for the deed which is involved here. Upon the theory that a trust resulted to the first wife, the plaintiff must claim as her successor in interest. It does not appear that she left a valid will in his favor, and if not, he could succeed to a portion only of her interest. Furthermore, it might possibly become a question as to whether the defendant took with notice of the son's equitable interest, and as to how she would be affected thereby. These latter questions have not been argued, and we think they should be left open upon the retrial.

It is deserving of serious consideration whether L. R. Peek, who was a party to the contract which the defendant relies upon, should not. have been joined as a party to the cross-suit. But the objection as to his non-joinder as a defendant to the cross-complaint was not taken by demurrer, and is not argued in the respondent's brief, and for these reasons we express no opinion concerning it.

We therefor advise that the judgment and order denying a new trial be reversed, and the cause remanded for a new trial.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.