## KATHERINE SEAGER OFFUTT vs. CATHARINE V. . OFFUTT₀ ET AL.

*Husband and wife.—Written Promise by husband in consideration of marriage—Specific Performance.*

A man wrote a letter to a woman promising that if she would marry him, he would take care of and support her as long as she lived.  After their marriage, he made a will leaving all of his property to her, which, upon his death, was found to be invalid, because not properly attested.  *Held,* that the letter was sufficiently definite and certain to establish a contract to provide for the woman in consideration of marriage, that the wife is entitled to specific performance of this contract against the heirs at law of her husband, and that the case should be referred to an auditor to ascertain from testimony, what sum should be allowed to the wife for her support, regard being had in ascertaining such sum to the value of the estate of the decedent, and the condition in life of the widow.

*Decided June 24th, 1907.*

Appeal from the Circuit Court for Montgomery County (HENDERSON and MOTTER, JJ.)

The cause was argued before BOYD, PEARCE, SCHMUCKER, BURKE, and ROGERS, JJ.

*Robert B. Peter,* for the appellant.

*Edward C. Peter* and *Charles W. Prettyman* (with whom was *H. W. Talbott* on the brief), for the appellees.

ROGERS, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Montgomery County dismissing the appellant's bill of complaint.

The record discloses that Luther M. Offutt, late of Montgomery County, a widower without children departed this life on the 30th day of November, 1904, intestate, leaving a widow, three sisters and several nephews and nieces, all of whom are made parties plaintiff and defendants to this suit.

That in June, 1890, the complainant established a school in Montgomery County near the home of said Luther M. Offutt. That soon after the appellant came to said neighborhood the said Luther M. Offutt began to visit her. Said Offutt then being sixty-two and the appellant thirty-nine years of age. That after a short acquaintance the said Luther M. Offutt asked the appellant to marry him, but was refused. That he continued his suit however while she remained in the county and was repeatedly refused by her. That in November, 1891, appellant returned to Washington, D. C., and from that time until June, 1901, the said Offutt continued to visit appellant, urging her to marry him, offering as an inducement that she should have all he possessed. Appellant being then fifty years of age and said Offutt seventy-three. That at that time she was living with friends surrounded by all the comforts of city life and enjoying the society of refined and cultivated persons, to which she had been accustomed all of her

life; that she had enjoyed rare opportunities for cultivating her mind, having been a daughter of a Professor of Modern Languages at the Naval Academy at Annapolis, Md., and having taught and travelled extensively abroad. That said Offutt lived on a farm in a sparsely settled community. That the appellant well knew that if she married said Offutt, she would have to make many sacrifices for his sake, and exchange the comforts of city life for a life on a farm, with few if any of the conveniences to which she had been accustomed. But the said Offutt persisted in his declarations of love for the appellant and promised repeatedly that she should have all the property he owned. That he valued his farm at $50,000 which would be hers if she married him, as well as all of his personal property amounting in the aggregate to several thousand. That appellant after consulting with her sister in regard to the matter, wrote a letter to Offutt as coming from her sister, and suggested that his offer to her that she should have all his property should be submitted in writing. That in reply to said letter, the said Offutt wrote the following letter:

Montgomery Co. Md.

Great Falls June 25 1901

"My dear Darling sweate intended wife I am astonish at you to think that you have so littler confidence in me what I have told you and rote to you you are first with me above all others you are one that my honner before God that I have pleged myself to take care of and support you as long as you live and no one else. Who has a better rite to it then you what is mine will be yours and what is yours will be mine You will be as myself I will never turn from you to no one hoe has the best rite to what I have got but you I will do ennything that is rite for you I want you to be satisfied and contented and happy you will be in the hands of one that care more for you then you do for yourself I will do enything that you want me to do that is rite and to please you and happy and contented and I will fix it in enny whay that will please you and I don't want no one else to have it but yourself don't you worry your mind about that we will fix that to suite ous both whatever way way that you wantted will done to have you to be better than enny one ells that you are today with me but I

ant with you you don't love me as I doe'you I am siffide with you and don't want to ask enny one advice when I please myself I don't care hoe it displeases it is the same with me I don't ask ennyone to tell me what I shall doe I will do what I believe is right and when I am rite I am sattifid and I no am rite I always please myself first and others come next I don't ask your sister or enny else to supporte you that my parte to care of I have all the respect for your sister and family if I dident I woulde have for you what I otten have I would have bin to see see you but for your letter you ritte to me on the 12th of June that you ment possible that I mustent rite or come to see you till you rite to me I was in Washington two or times but I was afraid to come to see you it wasent I dident want to come to see you and I went to see you but I dident see you I thought you dident care to see me I think this ottobe satisfactory to you I would like very much to see you and have a talk with you I want you to give a decided answer in your letter you rite as I am bin in dout longer nof you have time onof to doe what you intended to doe one way other I am tired of long answer Good by from your true and best friend on earth that you have if you nue it.

Luther M. Offutt."

That appellant received said letter, addressed in her own handwriting and postmarked Great Falls, June 26th, 1901. That appellant confiding in the undertaking and promise of said Offutt in said letter contained, married said Offutt on 15th October, 1901. That a month and five days after the ceremony of marriage was performed, in execution of the promise by said Offutt contained in said letter, they decided that said Offutt should execute a will devising and bequeathing all of his estate to this appellant. That on the 20th day of November, 1901, said Offutt did sign said will but it not being properly attested, was refused probate by the Orphans' Court of Montgomery County after his, Offutt's, death.

That the apprehensions of appellant as to the consequences of the change of her condition were well founded. That added to her many other inconveniences, soon after her marriage, the health of said Offutt became very bad, and that the greater part of her married life was spent in nursing said Offutt through a long and serious illness. His last sickness being of

nearly fifteen months duration. That said Offutt died without having carried out his promise contained in his letter of June 25th, 1901, or having in any way provided for this appellant. That said Offutt died, seized and possessed of certain real estate; subject to a mortgage of 1770 dollars, and personalty worth $1,382.35 and cash $1,063.68.

That the appellant has performed all the requirements of said agreement on her part to be performed, and that heirs of said Luther M. Offutt refuse to convey said property to this appellant, and that the administrator refuses to perform said agreement and declares he will not recognize or carry out said contract or agreement of June 25th, 1901.

The bill then prays for a receiver, specific performance and general relief and process against those interested. The defendants answered making a general denial, and relied upon the Statute of Frauds. There is testimony tending to show we think conclusively that the letter of June 25th, 1901, was written by said Luther M. Offutt and received by appellant in due course of mail. There is also testimony fixing the value of the real estate to be approximately at $10,000 and the personalty at something over two thousand dollars. There is also testimony tending to show that the appellant left a comfortable home in the city of Washington and surroundings most agreeable and pleasant in their nature.

The learned Court after a very able and exhaustive review of the facts and law, as we have said dismissed the appellant's bill thus denying her all relief. In this we think the Court erred. We entirely agree with the learned Judges in their view of the law, that when a verbal contract is made in relation to, or upon consideration of marriage, the marriage alone is not a part performance upon which to decree a specific execution. This rule, which is firmly established, is based upon the express language of the statute. A promise made in anticipation of and followed by the marriage, is the exact case contemplated by the statute. It is plain that the marriage adds nothing to the very circumstances described by the statutory provision which makes writing essential. In fact, until a mar-

riage take place, there is no binding agreement independent of the statute, so that the marriage itself is a necessary part of the agreement made upon consideration of it, which the Legislature has said must be in writing, *Crane* v. *Gough,* 4 Md. 316; *Hunt* v. *Hunt,* 171 N. Y. 396; *Lloyd* v. *Fulton,* 91 U. S. 479; *McAnnulty* v. *McAnnulty,* 120 Ills. 26.

But we cannot agree with the learned Court below that the letter of June 25th, 1901, is so vague and indefinite in its terms that the complainant is entitled to no relief. On the contrary we think its terms are a definite and specific proposition, and an acceptance on the part of the plaintiff, such as ought to be binding in a Court of equity. We recognize that the contract must be definite and certain in its terms and must be free, not only from all ambiguity, but likewise from all shade or color of ambiguity. *Dixon* v. *Dixon,* 92 Md. 438; *Horner* v. *Woodland,* 88 Md. 512; *Waters* v. *Howard,* 8 Gill, 277.

Specific performance is not a matter of right in the litigant but it is one of sound judicial discretion controlled by established principles of equity, and it will be granted or withheld by the Court upon a consideration of all the circumstances of each particular case. It must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties.

Now let us examine this letter of June 25th, 1901, by this test. By whom was it written? Every item of evidence in the record tends to show that it was written by Luther M. Offutt to the plaintiff. The handwriting was proved to be his, posted from Great Falls, his postoffice, received by the plaintiff, in due course of mail, directed in the handwriting of the plaintiff, and explained why she directed it, and as the Court below remarked, "Indeed it is doubtful whether any one else could or would have been guilty of such an effusion." The letter was in the possession of the plaintiff, filed in evidence by her, and is in perfect accord with the declarations and intentions of the deceased to the plaintiff for eleven years or more, and further there is not the slightest evidence in this case that plaintiff procured this letter

.in any other than a proper manner. We will assume therefore that this letter is a genuine production of Luther M. Offutt, and is properly in evidence in this case, and further that the offer and promise therein contained, must be construed most strongly against the proposer. Does it furnish evidence of a contract that is definite and certain in its terms, and that is free from all ambiguity? Here is a suitor of eleven years standing, required to put his proposal in writing, and attempts to do so, and his marriage to the lady to be the reward, and this solemn promise follows: "That I have tolde you and rote to you you are first with me above all other you are one that my honner before God that I have plege myself to take care of and support as long as you live." Is this definite? "I have plege myself to take care of and support as long as you live." Whom does he promise to support? Miss Seager—how long? As long as she lives. Why? If she will marry him. Does she marry him? She does. Does he provide for her support as long as she lives? No. Is the plaintiff under this state of facts entitled to relief in a Court of equity, the promisor having died without in any manner performing his promise? We think yes, upon the plainest principles of equity and justice.

In *Stilley* v. *Folger*, 14 Ohio, 610, the Court says: "Indeed, we think it may be considered as well settled at this day that almost any *bona fide* and reasonable agreement made before marriage to secure the wife the enjoyment of either her own separate property or a portion of that of her husband, whether during coverture or after death will be carried into execution in a Court of Chancery." *McNutt* v. *McNutt*, 116 Ind. 545; 19 N. E. 115, it is said: "Executory agreements made between a man and a woman, who afterwards marry, and which then become void at the common law, in the application of the conscientious principles of equity will be specifically enforced against either husband or wife at the suit of the other." This doctrine is fully recognized in *Phillips* v. *Phillips*, 83 Mich. 259; 47 N. W. Rep. 110. That was a case in which a man of 66 years and a woman 46 agreed before marriage to exe-

cute to her a deed for a one-half undivided interest in 95 acres of land, and she was to deed back to him the same land with a life interest.  He performed and she would not.  They separated after marriage and he filed a bill to compel performance on her part.  The Court granted the relief prayed and said, while there is testimony in the case tending to show that defendant married complainant rather from mercenary motives than love or affection, yet there is nothing in the record to warrant the conclusion that his intellect or will had become enfeebled by age, or that the execution of the deed was obtained by any improper or undue influence.  Both understood the situation fully.  They had known each other twenty years.  The terms of the agreement were discussed frequently, and the reasons stated why she wanted the deed.  Both understood the full purpose of the arrangement, and deliberately made it.  He fully executed it by the marriage and delivery of the deed.  She violated it by refusing to execute the lease, neither is deserving of much consideration.  But a Court of equity has done all it can do or ought to do, when it shall have decreed the specific performance of the antenuptial contract which he fully, and she only partially performed.

In *Miller* v. *Goodwin*, 8 Gray (Mass.) 542, JUDGE METCALF says: "A marriage between parties, who have previously made contracts with each other, which are to be performed presently, or during the marriage, the marriage releases or extinguishes such contracts."  This has been law from the time of Edward IV.  *Co. Lit*, 264B; I Bl. Com. 442.  Such contracts however, when made in contemplation of marriage, and respecting the property of either of the parties, though released or extinguished at law, are held good in equity, and will be enforced by a Court of Chancery against the heirs of the party in default.  *Holthan* v. *Ryland*, Nels. Ch. 205; *Haymer* v. *Haymer*, 2 Vent. 343; 2 Vern. 480; 2 *Spence Eq. Jur.*, 506, 661; 2 *Story on Eq.*, 1370.

In *Moore* v. *Allen*, 26 Colorado, 197, the Court says:  "He has failed to carry out his agreement, but by his promise upon which she relied, she has been induced to enter into a relation

from which she can not recede, and which she is powerless to change. .The result of his deception and artifice is such a fraud upon plaintiff in error, and has placed her in such a situation that the promise to convey is taken out of the statute; or perhaps more accurately speaking equity will not permit it to shield such a fraud." *Green* v. *Green*, 34 Kan. 740; *Peck* v. *Peck*, 77 Cal. 106; *Glass* v. *Hulbert*, 102 Mass. 24.

In *Jacobus, Exrs.* v *Jacobus*, 20 N. J. Eq. 54, where a "good and sufficient support" had been reserved, the Court say, must be construed to mean such as is proper for a mother and the head of a family, with the fortune and rank of her husband and his children.

And again in *Chubb* v. *Peckham*, 13 N. J. Chan. 207, it is said: "But having been entered into voluntarily and in good faith, the parents are entitled to their support at the hands of the grantees so long as the avails of the property conveyed or the means of the children will suffice for that purpose. There must be a decree for specific performance and a reference to a master to ascertain and report what would be a suitable provision, weekly or otherwise, for the comfortable support and maintenance of the complainant, and also of his wife, according to the terms and provisions of the contract." And in *Clancy* v. *Flusky*, 187 Ills. 609, the same doctrine is held, and also in *Tilton* v. *Tilton*, 9 N. H. 385.

In *Thompson* v. *Stevens*, 71 Pa. St. 169, "If the (plaintiff) would stay with him (testator) as long as she lived he would provide and give her full and plenty after he was gone, so that she need not to work." Now certainly, here is a measure by which the amount can be ascertained, and which brings the case within the rule of certainty to a common intent. Consideration being had of the condition in life of the plaintiff, what annuity would place her in such circumstances that she need not work.

But we are not without authority in our own State. In *Donnelly* v. *Edelen*, 40 Md. 1.17, where the testator had by his will provided for his daughters a home during their single ·ives on the farm devised to his son together with a reasonable

and moderate support therefrom, JUDGE ALVEY delivering the opinion of this Court says: "And without entering at all into an investigation as to what would be a fair compensation for the loss of the home on the farm, simply as a local habitation or place of residence, the proof is abundant to show that the amounts decreed to be paid to the several complainants are entirely inadequate to afford even a reasonable and moderate supply of food and clothing, regard being had, in making the estimate, not only to the value and yield of the estate devised, but to the condition and habits in life of the testator, and of his children, for whom the provision is made," and that the whole net income of the farm may be required to furnish this reasonable and moderate support, can make no difference. Neither the devisee, nor the defendant claiming under him, could or can rightfully appropriate any part of the net income from the farm, until the reasonable and moderate support of the single daughters of the testator be supplied. And if the net income from the farm be insnfficient for this purpose, it is alike the misfortune of the complainants and the defendants, and refers to *Tolson* v. *Tolson*, 8 Gill 376, and *Willett* v. *Carroll*, 13 Md. 459. So that we are of opinion that the decree of the lower Court must be reversed, and the cause remanded, that the proceedings may be referred to the auditor to ascertain from such testimony as may be produced before him what will be a proper sum to be allowed the complainant below for her support, regard being had, in making the estimate, not only to the value and yield of the estate of the decedent, Luther M. Offutt, but, to the condition and habits in life of Luther M. Offutt and his wife for whom the provision is made.

It follows from what we have said that the decree of the lower Court must be reversed, with costs to the appellant above and below.

*Decree reversed and cause remanded that proceedings may be taken in conformity with the views herein expressed.*