[Civ. No. 3501.   First Appellate District, Division One.—September 7, 1920.]

GERTRUDE O. HUGHES, Appellant, v. THOMAS HUGHES, Respondent.

[1] MARRIAGE — ORAL ANTENUPTIAL AGREEMENT — CONVEYANCE OF PROPERTY—STATUTE OF FRAUDS.—An oral antenuptial agreement to convey real and personal property after marriage in consideration of marriage falls within the inhibition of the statute of frauds.

[2] ID.—SUBSEQUENT MARRIAGE.—An oral antenuptial agreement to convey property after marriage is not taken out of the statute of frauds by the subsequent marriage of the parties.

[3] ID.—EXECUTION OF WILL — INSUFFICIENT PART PERFORMANCE. — An oral antenuptial agreement to convey property after marriage is not taken out of the statute of frauds by the execution of a

1.   Oral antenuptial agreement as validated by postnuptial contract or conveyance in writing, notes, 13 **Ann. Cas.** 556; **Ann. Cas.** 1915A, 271.

will in favor of the other contracting party after marriage, although the execution of such will was a part of the antenuptial agreement.

[4] ID.—RELIEF IN EQUITY—FRAUD.—A court of equity will not enforce an oral antenuptial agreement to convey real and personal property after marriage unless it is made to appear that the promisor by some fraud or deceit prevented the execution of the agreement in writing.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas K. Case for Appellant.

G. P. Adams for Respondent.

WASTE, P. J.—Plaintiff brought this action against her husband seeking specific performance of an alleged oral antenuptial agreement to convey real and personal property after marriage. A demurrer to the amended complaint was sustained and plaintiff, declining to further amend, judgment was entered for the defendant, from which plaintiff appeals.

It is alleged in the amended complaint that the defendant is seventy-two years of age, and possesses property of the value of more than five million dollars. Between April 30 and December 24, 1918, the defendant importuned plaintiff to marry him, and offered, if she would do so, to convey to her property worth six hundred thousand dollars. To all these proposals the plaintiff turned a deaf ear. While the plaintiff was absent from the state of California, the defendant, pursuant to a design, and intention to compel the plaintiff to marry him, moved himself and his personal belongings into the residence of plaintiff in Los Angeles, and there took up his abode. He caused to be inserted and published in various newspapers statements to the effect that the plaintiff and himself were to be married about Christmas time, and caused copies of a photograph of plaintiff, which he took without her knowledge or consent from her residence, to be published in connection with these notices.

Finally, so it is alleged, the defendant, by pretending he was seriously ill, induced the plaintiff to go to him at

Santa Barbara, where he then was. On her arrival there she found that the defendant was not ill, but had so represented himself, in order to cause her to come to him. She then learned for the first time of the stories the defendant had published in the newspapers concerning the approaching nuptials. She discovered that he had also invited guests to be present at a certain time, had provided a wedding dinner, secured a marriage license, and had arranged for a minister to be present to perform the wedding ceremony. Plaintiff still persisted in her refusal to marry defendant. He thereupon stated that he would be ruined politically, that his social standing would be impaired, he would be disgraced and humiliated, and his opportunity to represent the state of California in the United States Senate, which he asserted had been entirely arranged and determined upon between himself and the Governor of the state, would thereby be lost to him. He promised that if plaintiff would marry him he would give her, as her own, a valuable diamond ring, a diamond stickpin, an ermine coat, and an automobile. At the same time defendant orally reiterated his promises that, if plaintiff would marry him, he would immediately after the marriage convey to her the real property formerly agreed to be given to her, and would erect an imposing residence on land owned by plaintiff. He promised, also, to purchase other land for her, and erect thereon an apartment house, at a cost of one hundred thousand dollars. He further agreed to pay off and discharge a sixty thousand dollar mortgage upon property belonging to the plaintiff.

Believing, and being deceived by all of these representations, so plaintiff alleges, she relied upon the oral promises of the defendant to transfer and convey the property to her, and married him upon the day set.

As a part of said oral antenuptial agreement, it is further alleged, defendant promised to execute and deliver to plaintiff his last will and testament, devising and bequeathing certain real and personal property to her. In apparent keeping with this promise defendant did, on the second day of January, 1919, execute and deliver to the plaintiff a will, which is set out in the complaint, whereby he devised and bequeathed to her real and personal property, and wherein he nominated plaintiff sole executrix without bonds.

In no other respects have the antenuptial promises been carried out. On the contrary, so it is alleged, the defendant has refused to perform his agreement. Plaintiff seeks a decree requiring the defendant to transfer, convey, and assign to her the real and personal property which she alleges he agreed to give to her, and asks for the appointment of a receiver to carry out its provisions. She further asks that, in case specific performance cannot be decreed as to any of said property, she be awarded damages to the extent of its value. The demurrer was both general and special, but the principal question to be considered on this appeal is the sufficiency of the allegations of the amended complaint, in view of the lower court's determination that it does not contain facts sufficient to state a cause of action. The conclusion we have reached upon that point is determinative of the entire case.

[1] According to the allegations of the amended complaint, the plaintiff and defendant "by and through said oral antenuptial agreement, . . . and pursuant to the defined terms thereof, as stated by said defendant to said plaintiff . . . were to effect a disposition of defendant's properties in plaintiff's favor, so that upon the assumption of the marital relation, said property rights of said plaintiff should become fixed and determined." Plaintiff has thereby pleaded an agreement required by the statute to be in writing. All contracts for marriage settlements must be in writing, and executed and acknowledged, or proved, in like manner as a grant of land is required to be executed and acknowledged or proved. (Civ. Code, sec. 178.) It is equally clear that the agreement alleged by the plaintiff to have been made by the defendant, and pleaded as an antenuptial contract, is not only one required to be in writing, but also falls within the inhibition of the statute of frauds, and is, therefore, invalid. Agreements made upon consideration of marriage, other than mutual promises to marry, and agreements to devise or bequeath any property, or make any provision for any person by will, are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or his agent. (Civ. Code, sec. 1624, subds. 3, 7; *Peek* v. *Peek*, 77 Cal. 106, 108, [11 Am. St. Rep. 244, 1 L. R. A. 185, 19 Pac. 227]; *Monsen* v. *Monsen*, 174 Cal. 97, 98, [162 Pac. 90].)

[2] The fact that the parties were afterward married does not operate to lift the bar of the statute. "A promise made in anticipation of a marriage, followed by a marriage, is the exact case contemplated by the statute. It is plain that the marriage adds nothing to the very circumstances described by the statutory provision which makes a writing essential; in fact, until a marriage takes place, there is no binding agreement independent of the statute, so that the marriage itself is a necessary part of every agreement made upon consideration of it which the legislature has said must be in writing." (*Hunt* v. *Hunt,* 171 N. Y. 396, 400, [59 L. R. A. 306, 64 N. E. 159, 160]; Pomeroy's Equitable Remedies (5 Pomeroy's Equity Jurisprudence, 4th ed.), par. 829; *Welch* v. *Whelpley,* 62 Mich. 15, 22, [4 Am. St. Rep. 810, 28 N. W. 744]; *Adams* v. *Adams,* 17 Or. 247, 254, [20 Pac. 633].) The allegations of the amended complaint bring the promises of the defendant in the instant case squarely within this rule. Again and again it alleged that the defendant promised plaintiff "that if she would marry him he would transfer and convey [the property] to her immediately after said marriage." In fact, every single promise is predicated upon the proposition that "if she [plaintiff] would marry him [defendant] he would" do thus and so "soon after," or "immediately after," marriage. The only consideration, therefore, for the defendant's promises was the marriage of the parties, which was not of itself sufficient to take the contract out of the statute of frauds. (*Peek* v. *Peek, supra; Trout* v. *Ogilvie,* 41 Cal. App. 167, [182 Pac. 333].)

[3] The subsequent making of defendant's will in favor of the plaintiff, following the marriage, was not such part performance of the oral agreement to make such will as to take the alleged contract out of the statute of frauds. (*Gould* v. *Mansfield,* 103 Mass. 408, 409, [4 Am. Rep. 573]; *Swash* v. *Sharpstein,* 14 Wash. 426, [32 L. R. A. 796, 44 Pac. 862]; *In re Edwall's Estate,* 75 Wash. 391, [134 Pac. 1041, 1046; *McClanahan* v. *McClanahan,* 77 Wash. 138, [Ann. Cas. 1915A, 461, 137 Pac. 479].) Furthermore, the alleged act of performance in that regard was not done by the plaintiff, who is the party seeking to enforce the contract, and does not estop the defendant from invoking the bar of the statute. (*Foster* v. *Maginnis,* 89 Cal. 264, 267,

[26 Pac. 828]; *Fritz* v. *Mills,* 12 Cal. App. 113, 118, [106 Pac. 725]; *Rathbun* v. *Rathbun,* 6 Barb. (N. Y.) 98, 106.)

Conceding that the marriage of the parties was not, of itself, sufficient part performance of the parol contract to convey the property in consideration of the marriage, the appellant yet seeks to avoid the interposition of the bar of the statute, upon the ground of equitable fraud. Her marriage, she contends, was brought about by the actual fraud of the defendant, and she takes the position that the acts, representations, and promises of the defendant induced her to so irretrievably change her condition as to afford her ground for relief in equity. Her allegation is that her marriage with the defendant was procured by artifice and fraud and upon the faith that the settlement of the property rights would be made. Her contention, therefore, is that the defendant should be required to make good his agreement, and not permitted to defeat it by pleading the bar of the statute. *Peek* v. *Peek,* 77 Cal. 106, [11 Am. St. Rep. 244, 1 L. R. A. 185, 19 Pac. 227], a case claimed by her to be almost exactly similar to the one at bar, is relied upon by appellant as conclusively establishing the doctrine contended for by her. In that case Peek orally promised his intended wife that if she would marry him he would, on or before the marriage, convey to her certain property. She relied upon this promise, and married him ''for no other reason, or consideration.'' The conveyance was not made. Peek put it off by excuses and protestations, and on the morning of the marriage, without the knowledge of the intended wife, conveyed the property to his minor son by a former marriage. After the wedding, the parties went to live upon the property. A year later Peek deserted his wife, and the minor, by his guardian, brought suit against her to recover possession of the property, and obtained a judgment in his favor. The supreme court, in its opinion reversing the case, held that the foundation of the wife's claim, set up by way of cross-complaint, being the promise of Peek, was within the statute of frauds, and that the subsequent marriage of the parties was not such part performance as would induce a court of equity to give relief. But the fact that the marriage was brought about by the actual fraud of Peek, in inducing his wife to marry him, by promising to convey the property to her, when at that very

time he had no intention of so doing, and was conveying
it to someone else, seemed to the court to make a difference,
and it held that as the fraud had brought· about an irre-
trievable change of the position of the wife, to wit, the mar-
riage, equity should enforce the agreement.

The particular language of the opinion of interest in this
discussion is found in the following quotation: ''We do not
say that the mere fraudulent omission to have an agree-
ment reduced to writing would of itself be ground for
specifically enforcing the agreement. But where the fraudu-
lent contrivance induces an irretrievable change of position,
equity will enforce the agreement. And the marriage
brought about by the fraudulent contrivance is a change of
position within the meaning of the rule. In *Glass* v. *Hul-
bert,* 102 Mass. 24, [3 Am. Rep. 418], in reasoning upon
somewhat different facts, to the conclusion that, in order to
be ground for the enforcement of the oral contract, the
fraudulent contrivance must have induced some irretrievable
change of position, the court said: 'The cases most fre-
quently referred to are those arising out of agreements for
marriage settlements. In such cases the marriage, although
not regarded as a part performance of the agreement for a
marriage settlement, is such an irretrievable change of situa-
tion, that if procured by artifice, upon the faith that the
settlement had been made, or the assurance that it would be
executed, the other party is held to make good the agree-
ment, and not permitted to defeat it by pleading the stat-
ute.' This, we think, is a correct statement of the law.''
(*Peek* v. *Peek, supra.*) The case of *Glass* v. *Hulbert,* quoted
from in the Peek case, was one relating to an oral con-
tract for the sale of real property, and the language so
strongly approved by our supreme court was pure *dictum.*
The Massachusetts court, however, cites the early English
case of *Maxwell* v. *Mountacute,* Prec. in Ch. 526, another
and better report of the same case being found in *Mounta-
cute* v. *Maxwell,* 1 Eq. Cas. Abr. 19. The full report of
these cases will be found in volume 24, English Reports (full
reprint), Precedents in Chancery, at pages 235 and 541,
respectively. In that case the plaintiff, the wife, brought
a bill against the defendant, her husband, ''setting forth
that the defendant before her intermarriage with him did
promise that she should enjoy all her own estate to her sep-

arate use; that he agreed to execute writings to that pur-
pose, and had instructed counsel to draw such writings, and
that when they were to be married, the writings not being
perfected, the defendant desired this might not delay the
match, in regard his friends being there it might shame
him: but engaged that upon his honour she should have the
same advantage of the agreement, as if it were in writing
drawn in form by counsel and executed; upon which the
marriage took effect, and afterwards the plaintiff wrote a
letter to the defendant her husband, putting him in mind
of his promise, to which the defendant her husband, wrote
her an answer under his hand, expressing that he was always
willing she should enjoy her own fortune as if sole, and
that it should be at her command.'' To this bill the de-
fendant pleaded the statute of frauds and perjuries, which
Lord Chancellor Parker allowed, saying: ''In cases of fraud,
equity should relieve, even against the words of the stat-
ute; as if one agreement in writing should be proposed and
drawn, and another fraudulently and secretly brought in
and executed in lieu of the former; in this or such like cases
of fraud, equity would relieve; but where there is no
fraud, only relying upon the honour, word or promise of
the defendant, the statute making those promises void,
equity will not interfere.'' (*Mountacute* v. *Maxwell, supra.*)
In the earlier citation of the case the chancellor said ''that
where, on a treaty for a marriage, or any other treaty,
the parties come to an agreement, but the same is never
reduced into writing, nor any proposal made for that pur-
pose, so that they rely wholly on their parol agreement,
that *unless this be executed in part,* neither party can
compel the other to a specific performance, for that the
statute of frauds is directly in their way; but if there were
any agreement for reducing the same into writing, and that
is prevented by *the fraud* and *practice* of the other party,
that this court will in such case give relief; as where in-
structions are given, and preparations made for the draw-
ing of a marriage settlement, and before the completing
of it the woman is drawn, by the assurances and promises
of the man, to perform it, and after to marry him.'' (*Max-
well* v. *Mountacute, supra.* See, also, Browne on Statute
of Frauds, par. 444.)

When read in the light of what we believe to be the only reasonable and true rule, as announced by the chancellor, and having in mind the actual facts upon which the decision was based, the case of *Peek* v. *Peek, supra,* loses the weight of authority appellant would impart to it. It ccases to have compelling force in the instant case, in which, as we shall presently show, the circumstances relied upon by the appellant did not amount to such fraud as to bring the situation of the parties within the purview of a court of equity. To give that case, disassociated from its facts, the full construction sought by the appellant would have the practical effect of making it an authority for holding that marriage is such part performance of oral antenuptial agreements as to remove them from the operation of the statute of frauds, which is not the law. We think the broad application of the doctrine contended for by appellant is not warranted by the principle or sustained by the authorities.

The other cases, relied upon by the appellant, are either based upon facts, as was the Peek case, bringing the decisions within the application of the doctrine announced by the English chancellor, or they may be otherwise distinguished from the case at bar. In each there has been something more than mere failure, or refusal upon the part of the promisor, to execute an oral antenuptial agreement for a property settlement. In *Petty* v. *Petty,* 43 Ky. (4 B. Mon.) 215, [39 Am. Dec. 501], the wife charged that her husband promised that immediately after marriage he would settle on her at his death certain property, on which promise she closed the contract of marriage. A few days after the marriage her husband disclosed to her that he had been induced to and had, by an irrevocable deed of gift executed just before the marriage, made over all of his property to his children by a former marriage. On appeal the court held that it had no power to enforce the marriage settlement, but upon the theory that the transfer was a fraud upon the dower right of the wife, allowed by the laws of that state, it directed the entry of a decree annulling the deed for the lands, so far as the same affected or encumbered the complainant's right to dower thereon. In *Offutt* v. *Offutt,* 106 Md. 236, [124 Am. St. Rep. 491, 12 L. R. A. (N. S.) 232, 67 Atl. 138], it was held that a definite and specific proposition in writing made by the husband, before the

marriage, and accepted by the intended wife, followed by
consummation of the contract, entitled the wife to specific
performance. *Moore* v. *Allen,* 26 Colo. 197, [77 Am. St.
Rep. 255, 57 Pac. 698], was an action in ejectment by one
claiming under the husband. The wife, by way of cross-
complaint, alleged a parol antenuptial agreement between
herself and husband, who at the time was the owner of
the property, whereby he agreed to convey the same to her
after their marriage. In compliance with his promise he
placed her in actual possession of the property before the
marriage. She made lasting and valuable improvements
thereon, but the husband neglected and refused to convey
the property to her. It was held that the facts stated took
the parol agreement out of the statute of frauds. In *Daily*
v. *Minnick,* 117 Iowa, 563, [60 L. R. A. 840, 91 N. W. 913],
the deceased orally agreed to convey land to a child, in
consideration of being allowed to name it. The child was
named according to his wishes, and continued to bear such
name to the time of the trial of the action. It was held
that such contract was not void under the statute of frauds,
since the naming of the child and his bearing the name
constituted payment of the purchase price of the land,
within the exception prescribed by the code of Iowa, de-
claring that an oral contract to convey land shall not
be void where the purchase money, or any portion thereof,
has been received by the vendor. In *Green* v. *Green,* 34
Kan. 740, [55 Am. Rep. 256, 10 Pac. 156], a widow, pos-
sessed of one hundred and sixty acres of land, which was
all her property, and her sole means of support, induced
Green, a cripple, possessed of only a few hundred dollars,
to make a matrimonial engagement with her and marry her,
upon her verbal promise and agreement that the farm was
her own, and that its proceeds should go to their support
after their marriage, as long as they lived. After the mar-
riage Green furnished the rooms, bought food and clothing
for the family, including the children of his wife by a
former marriage, and with his own money paid off a mort-
gage upon the farm. As a matter of fact, the widow had
secretly deeded the property to her daughters by the former
marriage, on the eve of the wedding with Green, the con-
sideration being love and affection. It was held that the
deeds to the daughters were a fraud upon the rights of

the husband, and that he was entitled to have them set aside. In *Kelly* v. *McGrath*, 70 Ala. 75, 45 Am. Rep. 75], it was held that a court of equity should set aside, as a fraud on the marital rights of the husband, a secret conveyance, or settlement of her property by the intended wife, executed without his knowledge and in contemplation of the marriage. An almost identical situation was considered in *Freeman* v. *Hartman*, 45 Ill. 57, [92 Am. Dec. 193].

[4] From our examination of the foregoing, and many other authorities, we are convinced that the distinguishing feature of the case at bar did not amount to such actual fraud as to entitle the plaintiff to any equitable relief. The facts present nothing more than the mere omission to put the contract into writing before the marriage and a failure to perform it thereafter. It does not appear that the defendant in any manner prevented the due execution of a valid marriage settlement in writing, such as would have satisfied the statute. It is not alleged, or contended, that the plaintiff was induced through deceit, false statement, or concealment of the defendant to waive a written agreement and rely upon the promises in parol, before entering into the marriage relation. (2 Pomeroy's Equity Jurisprudence, 4th ed., par. 921.) For aught that appears in the amended complaint, the defendant may have entered into his engagements in the highest good faith, and with every good intention, and with full ability to perform. Granting, for the purpose of the discussion, that the plaintiff may have been led into the marriage by the Lochinvar courtship of the aged swain, the inducement went only to that relation. By no fraud, trick, or device, so far as the record discloses, was she prevented from securing what the law sanctions, a written marriage settlement. Equity, therefore, can afford her no relief.

The judgment is affirmed.

Kinsell, J., *pro tem.*, and Richards, J., concurred.