FRANCES HEENAN BROWNING, an Infant, by CAROLYN M. HEENAN, Her Guardian ad Litem, Plaintiff, *v.* EDWARD W. BROWNING and EDBRO REALTY CO., INC., Defendants.

Supreme Court, New York County, June 13, 1930.

178

*Daniel F. Cohalan* [*George J. Langley* of counsel], for the plaintiff.

*Henry P. Goulston,* for the defendants.

FRANKENTHALER, J. The defendants, Edward W. Browning and Edbro Realty Co., Inc., move to dismiss the complaint of the plaintiff, Frances Heenan Browning, on the ground that the alleged contract upon which the action is based is unenforcible under the Statute of Frauds. A second motion asks that the same pleading be dismissed for failure to state a cause of action, while a third seeks to cancel notices of the pendency of this action which have been filed in the office of the county clerk. The complaint alleges that the defendant Browning began to woo the plaintiff several months prior to April 10, 1926; that during his courtship he repeatedly proposed marriage to her, representing that he owned millions of dollars worth of real property, both in his own name and in that of the defendant Edbro Realty Co., Inc.; that he further stated that he owned and controlled that corporation and that Edbro Realty Co., Inc., was only a name; and that he promised, for himself and on behalf of the corporation, that if the plaintiff married him she would have, " and that he would see to it that she would have," a wife's dower interest in all of said property. The plaintiff alleges further that in reliance on these statements and promises she married Browning on April 10, 1926. She asserts that at the time the representations were made, Browning owned all of the stock of the Edbro Realty Co., Inc., and controlled the officers and affairs of the company, and that the same situation still prevails. She charges that the corporation " is a dummy, and the same is a device wrought by said Browning to shield the property held in the name of said corporation from the liabilities which would attach to ownership of said property in his own name, and particularly to defeat the infant plaintiff's right to dower therein." The complaint continues with an allegation that Browning has failed and refused since the marriage to take such action as was necessary to secure to the plaintiff her inchoate right of dower, or an equivalent interest in the twenty-four distinct parcels of property which were, at the time of her marriage, held by the corporation. Accordingly, the plaintiff asks

that she be adjudged to have an inchoate right of dower in those properties and that the defendants be directed to record suitable instruments in order to safeguard her dower rights. It is difficult to define the exact theory upon which the plaintiff is proceeding. If the basis of her suit is Browning's failure to perform his alleged promise that he would see to it that she would have a dower interest in the real estate held by the corporation, the Statute of Frauds appears to constitute a perfect defense to the action, as plaintiff concededly relies upon an oral promise without any written memorandum to support it. Subdivision 3 of section 31 of the Personal Property Law provides that " every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: * * * Is made in consideration of marriage, except mutual promises to marry." As the promise here is alleged to have been made in consideration of marriage the statute seems to be directly applicable, and the case may not be taken out of its operation upon the theory that the plaintiff's marrying Browning constituted such part performance as would render it inequitable to give effect to the statute. (*Hunt* v. *Hunt*, 171 N. Y. 396; 27 C. J. 345.) As the Court of Appeals said in *Hunt* v. *Hunt* (*supra*, at pp. 400, 401): "All contracts founded upon consideration of marriage, except mutual promises to marry, shall be void unless the commands of the statute are obeyed. Mutual executory *promises* to marry are expressly excluded from its operation. All other contracts, founded upon consideration of *marriage*, are as clearly within its terms. These two diverse provisions of the statute standing in juxtaposition to each other, so plainly disclose the legislative intent as to render construction unnecessary if not impossible. The letter of the law bears its own interpretation. This view of the statute is not original. Pomeroy in his work on Contracts, under the head of ' specific performance ' (2d ed. sec. 111), states it most forcibly as follows: ' When a verbal contract is made in relation to or upon the consideration of marriage, the marriage alone is not a part performance upon which to decree specific execution. This rule, which is firmly established, is based upon the express language of the statute. A promise made in anticipation of a marriage, followed by a marriage, is the exact case contemplated by the statute. It is plain that the marriage adds nothing to the very circumstances described by the statutory provision which makes a writing essential; in fact, until a marriage takes place, there is no binding agreement independent of the statute, so that the marriage itself is a necessary part of every agreement made upon consideration of it which

the Legislature has said must be in writing.' Beach in his Modern Equity Jurisprudence (sec. 622) says: ' It is well settled that marriage is not an act of part performance which will take a parol contract out of the statute; for the statute expressly provides that a contract in consideration of marriage shall not be binding unless it is in writing.' This is also the view of the statute entertained by the courts of England and the courts in other jurisdictions where the English Statute of Frauds has been copied (*Caton* v. *Caton*, L. R. [2 Eng. & Ir. App.] 127, affg. S. C., 1 Ch. App. 137; *Taylor* v. *Beach*, 1 Ves. Sr. 297; *Dundas* v. *Dutens*, 1 Ves. 196; *Lassence* v. *Tierney*, 1 McN. & G. 551; *Warden* v. *Jones*, 23 Beav. 487; *Peek* v. *Peek*, 77 Cal. 106; *Bradley* v. *Saddler*, 54 Ga. 681; *McAnnulty* v. *McAnnulty*, 129 Ill. 26; *Henry* v. *Henry*, 27 Ohio St. 121)." In view of the foregoing it is unnecessary to discuss the effect of section 259 of the Real Property Law upon the enforcibility of Browning's alleged promise. If this action is predicated upon fraudulent representations attributed to Browning, it need only be pointed out that all the various statements which he is charged in the complaint with having made are expressly stated to be true rather than false. As to his promise to see to it that his wife would obtain her dower rights in the corporate property, this may not be regarded as fraudulent in the absence of an allegation that at the time he made the promise he had no intention of performing it. This leaves for consideration the only other theory of legal liability which might possibly be invoked, namely, that Browning is estopped from maintaining that he and the corporation are separate legal entities. Reliance is placed upon the case of *Quaid* v. *Ratkowsky* (183 App. Div. 428; affd., 224 N. Y. 624) as supporting the estoppel theory. In that case, it is true, the fiction of the corporate entity was disregarded. An examination of the opinion of Mr. Justice SHEARN indicates, however, that the defendant there had sought to use the fiction as a means of perpetrating a fraud. He had appropriated and used the income from the corporate properties for his private purposes, mingling it ·with his own funds, and the properties were operated and managed as if they belonged to him. The corporation had filed no annual reports, there were no corporate minutes, and none of the corporate requirements for the protection of creditors had been complied with. In addition the corporate assets had been fraudulently transferred to him in order to render the corporation judgment proof, and these conveyances had been concealed from the plaintiffs. Nothing of the kind is alleged to have taken place in the instant case. It is true that the complaint avers that the corporation is a " dummy," created for the purpose of shielding Browning from the liabilities which would attach to

ownership of the corporate property in his own name. This purpose, however, is in itself a perfectly legitimate one, and in fact is one of the outstanding reasons for organizing corporations. The characterization of the corporation as a " dummy " is a mere conclusion in the absence of ultimate facts to support it. The charge that one of the purposes of organizing the Edbro Realty Co., Inc., was " to defeat the infant plaintiff's right to dower " is also a conclusion. Indeed, the very allegations of the complaint indicate that there is no justification for this accusation. It is alleged that the corporation was in existence " for sometime prior to April 10, 1926," the date of the marriage, while Browning is stated to have begun his courtship only several months before the marriage. Although it does not definitely appear from the pleading whether the organization of the corporation preceded or followed the commencement of Browning's attempts to woo the plaintiff, the allegations that repeatedly during the courting period he mentioned the existence of the corporation and that the corporation was an actuality at the time (paragraphs 5 and 7 of the complaint) tend to indicate that the incorporation antedated the relations between Browning and the plaintiff. Although affidavits may not be used to dismiss a complaint on the ground that it fails on its face to state a cause of action, it is well to note that Browning makes an affidavit that the Edbro Company was organized early in the year 1921, a statement which, dealing as it does with a matter of public record, may easily be verified. Under such circumstances it is difficult to perceive how it can be charged that the company was formed to defeat this plaintiff's dower right. It seems to me that the facts alleged in the complaint under consideration fall short of coming within the principle of *Quaid* v. *Ratkowsky* (*supra*), where the court expressly stated the evidence was sufficient to sustain a finding of actual fraud. As there appears to be insufficient basis for invoking the doctrine of equitable estoppel, and as the only theory upon which the complaint may be upheld is that it is one for breach of contract, in which event the Statute of Frauds would be a good defense, the motion to dismiss the complaint under rule 107 of the Rules of Civil Practice, subdivision 8, is granted, with leave to plead over within twenty days upon payment of ten dollars costs. In view of the dismissal of the complaint on this ground the other motions will be granted.