186 P.2d 390

**TELLEZ v. TELLEZ et al.**

No. 5001.

Supreme Court of New Mexico.

Oct. 15, 1947.

Rehearing Denied Nov. 24, 1947.

W. A. Sutherland, of Las Cruces, for appellants.

James H. Paxton, of Las Cruces, for appellee.

COMPTON, Justice.

This is a suit by appellee, Guadalupe Diaz Tellez, seeking relief in the nature of spec-

ific performance of an oral ante-nuptial contract. From an adverse judgment, appellants bring this appeal.

Eusebio Tellez, now deceased, in July, 1940, orally proposed marriage to appellee, then Guadalupe Diaz, now his widow, promising that if she would marry and care for him, as his wife, until death, that he would give her all his property, both real and personal. The proposal was first declined until the consent of her mother was obtained. Subsequent meetings resulted in the renewal of the proposal, and the mother's consent having been obtained, she accepted his offer according to its terms. Pursuant to the agreement, the deceased executed a will on or about August 1, 1940, whereby all his property was devised and bequeathed to appellee. In consideration of his promise, the marriage took place August 8, 1940.

Thereafter, while the parties were living together, and without the knowledge or consent of appellee, Eusebio Tellez conveyed the real estate here involved, to his children and grandchildren by a former marriage. This was a voluntary conveyance. Eusebio Tellez suffered a paralytic stroke on August 11, 1943, which required the constant care and attention of a nurse and other assistants. For convenience he was moved from his home to the home of a daughter, where he lived until his death, November 7, 1944. Soon after being taken to the daughter's home, difficulties arose between appellee and his children by the former marriage, causing appellee to leave the home of the daughter. She did not see her husband for about a year prior to his death.

The court made the following findings of fact, which we deem necessary to a decision:

"1. That in the latter part of July, 1940, the wife of Eusebio Tellez had died and that he had divided up what he considered his deceased wife's share with his children and claimed whatever he had left was his own. He was lonesome, had no one to look after him and wanted a companion. He talked to Joaquin Rodriguez and he told Eusebio Tellez that he knew a woman and Mr. Tellez asked for an introduction. Mr. Tellez found the woman was agreeable to him and he proposed to marry her and leave her all his property if she would marry him and take care of him as his wife until his death.

"2. This was agreeable to both parties and he made his will at the time in writing, duly attested, leaving all of his property to this woman, Guadalupe Diaz.

"7. That on the 8th of November, 1943, the said Eusebio Tellez executed a deed to his heirs named in the said deed covering all his real estate, which said deed is recorded in Book 105, page 608 of the Records of Dona Ana County, New Mexico.

That there was no consideration given for the execution and delivery of the said deed to his said children except the love and affection of the father for his children."

And then concluded as law:

"5. That fraud is not imputed to the conveyance of real estate by a father to his children, without further circumstances establishing such fraud.

"15. That the said Eusebio Tellez, by disposing of his said will without plaintiff's knowledge or consent during the time he was living with her and by deeding by gift all his real estate to the defendants was fraud upon the rights of plaintiff."

The question is whether the oral ante-nuptial contract stated in the findings may be enforced against the appellants who are the heirs at law of the deceased and grantees in a deed made by him after appellee and deceased married, by which he conveyed to them all of his property.

█ The deceased's agreement to leave his property to appellee for the consideration stated, implied that his property would be devised and bequeathed to her, in consideration of her marrying him and caring for him until his death. Teske v. Dittberner, 70 Neb. 544, 98 N.W. 57, 113 Am. St.Rep. 802. This was substantiated by the fact that before he married appellee deceased made his will and testament as he had agreed.

The English Statute of Frauds, Sec. 4 St. 29 Charles II, which is in force in this state, provides: "No action shall be brought * * * to charge any person upon any agreement made upon consideration of marriage, or upon any contract or sales of land, tenements or hereditaments, or any interest in or concerning them * * * unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged herewith, or some other person thereunto by him lawfully authorized."

Also, the legislature of New Mexico has enacted the following statute: "All contracts for marriage settlements and contracts for separation, must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed or acknowledged or proved." Sec. 65-208, N.M.Sts.1941.

█ The contract was within the fourth section of the English Statute of Frauds, in that it was an oral contract made upon consideration of marriage. The contract was not complete until the parties married, and the subsequent marriage was in no sense a part performance. The marriage itself was a necessary part of the agreement made upon its consideration. Brought v. Howard, 30 Ariz. 522, 249 P. 76, 48 A.L.R. 1347; Hughes v. Hughes, 49 Cal.App. 206, 193 P. 144. Likewise, the

contract was within the fourth section of the statute of frauds in that it was an oral contract for the sale of land. Quirk v. Bank of Commerce & Trust Co., 6 Cir., 244 F. 682; 4 Page on Wills, Sec. 1716.

The contract is within Sec. 65-208, N.M. Sts.1941, which requires that "All contracts for marriage settlements * * * must be in writing," etc. This statute was adopted in its exact language from California. In Hughes v. Hughes, supra, the California court held that a similar contract was within the statute of frauds, also within the California statute requiring marriage settlements to be in writing.

The trial court did not find that there was performance, or part performance, on the part of either of the parties that would free the agreement from the operation of the statute of frauds. The mere making of the will by deceased, prior to the marriage of the parties, was not a sufficient part performance of the marriage contract that would relieve it from the operation of the statute of frauds. Zellner v. Wassman, 184 Cal. 80, 193 P. 84; Hughes v. Hughes, supra.

The contract is void because it is against public policy. It was not only a contract in consideration of marriage, but the wife under the agreement was to receive compensation for caring for her husband "as his wife until his death;" what part of the consideration was for marriage and what part was for her care of him is not stated. But the latter must have been the principal consideration. It is certainly not divisible. A contract whereby the husband agrees to pay his wife for his care, which is a part of her duties as a wife, is without consideration, against public policy, and void. Such an agreement made after marriage would contravene 65-212, N.M. Sts.1941, as follows: "A husband and wife cannot by any contract with each other alter their legal relations, except of their property, and except that they may agree in writing, to an immediate separation, and may make provisions for the support of either of them and of their children during their separation." (Emphasis ours)

This statute states a public policy that cannot be annulled by an ante-nuptial agreement. But in the absence of a statute such contracts are generally held to be void for want of consideration, or against public policy. Bohanan v. Maxwell, 190 Iowa 1308, 181 N.W. 683, 14 A.L.R. 1004; In re Callister, 153 N.Y. 294, 47 N.E. 268, 60 Am.St.Rep. 620; Michigan Trust Co. v. Chapin, 106 Mich. 384, 64 N.W. 334, 58 Am.St.Rep. 490.

Nothing said here conflicts with our holding in McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250, in which an alleged parole ante-nuptial contract was considered. The question of whether the contract violated the public policy of the

state was not presented, considered, or passed upon by this court.

The judgment of the district court is reversed with directions to the trial court to reinstate the case upon its docket and enter an order dismissing appellee's complaint, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.