WILLIAM DETER FISCHER, APPELLANT, V. GOTTHARDT S. FISCHER ET AL., APPELLEES.

FILED JULY 7, 1921.   No. 21564.

1. **Statute of Frauds:** HEIRSHIP: ORAL CONTRACT. A verbal contract whereby a widower with five minor children promises an unmarried woman, pregnant by a third person, that if she will marry him and be a mother to his children, he will make her child, when born, an equal heir with the others in his estate, is void under the third subdivision of section 2630, Rev. St. 1913.

2. ———: MARRIAGE CONTRACT. Her agreement to marry and to care for his children constitutes one entire contract made "upon consideration of marriage," and therefore within the statute.

3. ———: ———: HEIRSHIP: PART PERFORMANCE. Neither the marriage nor, in addition, her compliance with the other terms of the contract constitute such part performance as will require the enforcement thereof upon the ground that a refusal would work a fraud upon her.

4. **Parent and Child:** DUTY OF STEPMOTHER. Without attempting to define the duty a stepmother owes to the children of her husband by a former wife, the proposition that she owes them *no* duty finds no support in nature, logic, or law.

APPEAL from the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Affirmed.*

*Halligan, Beatty & Halligan,* for appellant.

*Bruckman & Paulson, contra.*

Heard before MORRISSEY, C.J., ALDRICH, FLANSBURG and ROSE, JJ., ALLEN and REDICK, District Judges.

REDICK, District Judge.

This is an action in equity to compel the specific performance of an oral antenuptial agreement which plaintiff claims was made by his mother, Margaret Fischer, with the father of the defendants, Gotthardt Fischer. The circumstances out of which the agreement is alleged to have arisen, in brief, are as follows: Gotthardt Fischer had been a widower for about 2 years, having 5 minor children ranging from 6 to 14 years. Plaintiff's mother was an unmarried woman of 19, but pregnant of the plaintiff, whose father was other than Gotthardt. Through the efforts of friends Gotthardt and plaintiff's mother were introduced, and after three days' acquaintance, and upon urgent solicitation of Gotthardt, were married on or about January 7, 1882, and plaintiff was born May 10, thereafter.

The plaintiff states that the contract was that, in consideration of his mother marrying Gotthardt and being a mother to his children, taking care of them as her own until they reached manhood, the said Gotthardt would make the plaintiff an equal heir with the minor children of Gotthardt; plaintiff, therefore, claiming a one-sixth interest in the property of his stepfather, who by will gave it to his five children, expressly excluding plaintiff and two children of the Gotthardt marriage from all participation therein.

The only evidence of the contract comes from the mother, who, having refused the offer "because I was afraid I couldn't have a good home for my child, because the children would look down upon him," states the contract as contained in the answer to the question, "And what did he say about that? A. He says that they wouldn't; that he would promise me that if I would marry him he would give my child his name, and a home, and no one should know that it was not his child, and that it should have the same right in everything as his children."

It also appears in the evidence that on May 19, 1911, the plaintiff's mother obtained a divorce from Gotthardt on the grounds of cruelty, and an allowance of $4,000 permanent alimony.

The defendants rely upon the statute of frauds as contained in section 2630, Rev. St. 1913, as follows: "In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith.   *   *   *   Third.   Every agreement, promise, or undertaking made upon consideration of marriage, except mutual promises to marry"—also that the decree for divorce and alimony operated as a rescission or cancelation of the contract.

Upon the mere reading of the statute and statement of the contract there would seem to be no question that the latter was clearly within the former.   Where the supposed contract has nothing to rest upon as a consideration beyond the marriage, and even where there may be other considerations, but the real inducement was the marriage, there seems to be no conflict of opinion upon the proposition that the agreement is unenforceable. *Hunt v. Hunt,* 171 N. Y. 396; *Henry v. Henry,* 27 Ohio St. 121; *Mallory's Admrs. v. Mallory's Admr.,* 92 Ky. 316; *Bradley v. Saddler,* 54 Ga. 681; *Dienst v. Dienst,* 175 Mich. 724; *Rowell v. Barber,* 142 Wis. 304.   The question has not been decided in this state.

Counsel for appellant, however, states the proposition in his brief as follows: "An oral antenuptial agreement, fairly entered into between two parties, the consideration of which is the marriage of the parties, is not affected by the statute of frauds, when one of the parties in reliance thereon has married the other party, who has thereupon received, enjoyed and retained the benefits thereof, and where not to enforce such contract would be to perpetrate a fraud upon the innocent party."   The following cases are cited in support thereof, which will be considered in their order:

*Moore v. Allen,* 26 Colo. 197, which holds that equity will not permit the statute to be made an instrument for the perpetration of a fraud, and that where the marriage has been induced by *deception* and *artifice,* a wife having entered into a relation from which she cannot recede, the statute does not apply. The promise of the intended husband in that case was to convey to the wife certain real estate, and the fraud was claimed to arise from the fact that she had been given possession of the premises and had made lasting and valuable improvements thereon. It will therefore be noticed that there was some semblance of fraud entering into the contract, and the case belongs to that class in which the conscience of the chancellor is said to be touched by the peculiar hardships attendant upon a different decision. Moreover, the cases cited to support the decision fail to strengthen the application of the principle announced to the facts of that case. The first one, *Green v. Green,* 34 Kan. 740, was another "hardship" case in which the plaintiff, a cripple, was induced to marry the mother of the defendants upon the representation that she owned a farm, and that its proceeds should go to their support after they were married so long as they lived. On the eve of the marriage she executed deeds of the farm, constituting all of her property, to her children by the former marriage for the consideration of love and affection, and without the knowledge of plaintiff, and it was held that such deed was a fraud upon the rights of the husband and that he might have them set aside. The case presented a situation of active artifice and deception.

*Peck v. Peck,* 77 Cal. 106. In this case the court held marriage is not of itself part performance, and say: "But if the marriage was brought about by a fraudulent contrivance, as by a promise to have the conveyance executed, and the evasion of such promise by false representations, a court of equity will decree a conveyance." The artifice used in that case was that the day before the marriage the intended husband called the plaintiff to the

hotel for the purpose of executing the settlement agreed upon, and after leaving her for a few minutes returned, saying that a Mr. McKenny was out of town and it could not be attended to that evening; the next day "he said he would have the deeds drawn, and he went up and said that they were all busy at the courthouse, and he couldn't have it done at that time, and he called on me again with the same story—that the gentlemen at the courthouse were busy, and that he could not have the deeds fixed, and that I could rest contented." On the very day that he was making these excuses he executed a deed conveying the property to his son—another case of positive fraud.

*Petty v. Petty,* 4 B. Mon. (Ky.) 215. In this case the court refused to enforce the antenuptial contract as being within the terms of the statute, but the deeds which the husband had made to his children a few days before the marriage were set aside as a fraud upon the marital rights of the wife to the extent of her dower interest in her husband's property.

*Glass v. Hulbert,* 102 Mass. 24, 39. This case is not in point, but is cited for the following quotation from the opinion: "The marriage, although not regarded as a part performance of the agreement for a marriage settlement, is such an irretrievable change of situation that, *if procured by artifice,* upon the faith that the settlement had been, or the assurance that it would be, executed, the other party is held to make good the agreement, and not permitted to defeat it by pleading the statute." It will be noted that, "if procured by artifice," the marriage settlement may be enforced.

The plaintiff also cites *Weld v. Weld,* 71 Kan. 622: The intended wife being indebted to the intended husband on a note secured by mortgage, the parol agreement was that the marriage should operate as a satisfaction of the note, and the court held that there was no question of part performance, and that the marriage constituted payment, and there was no question of the statute of frauds, the entire contract having been executed.

Also, *Knights of Pythias v. Ferrell*, 83 Kan. 491: Here the parol antenuptial contract was that he would cause the wife's name to be inserted as a beneficiary with his children by a former marriage, and the change was actually made, and the court held that the contract was fully executed and the statute did not apply, and that a subsequent change of the certificate omitting the name of plaintiff as beneficiary, without her knowledge or consent, would not defeat her interest therein.

And the last case cited on this point, *Freitas v. Freitas*, 31 Cal. App. 16, 19, is to the same effect as *Knights of Pythias v. Ferrell*.

In none of the above cases was it held that the parol contract was taken out of the statute of frauds, except where it was shown that the complaining party was induced to enter into the marriage contract by some artifice and deception; and no case has been brought to our attention holding that the mere failure to keep the promise made in the agreement amounts to artifice or fraud. The case before us presents no fact or circumstance of the character just mentioned which would justify a court of equity in disregarding the statute.

The plaintiff, however, contends that the marriage was not the sole consideration for the contract, and says: "There was no duty upon Mrs. Fischer to rear and care for the children of Gotthardt Fischer and her agreement to do so, when fully performed and carried out, was a sufficient consideration to support the agreement of Gotthardt Fischer to make her child an equal heir with his own children." And in support of this proposition he cites *Larsen v. Johnson*, 78 Wis. 300. But in that case the court held that the contract was fully executed, and therefore not within the statute, the conveyance called for by the contract having been duly executed. If in the instant case the agreement had been that Gotthardt should make a conveyance to plaintiff upon his being born, and such conveyance had been executed and delivered, the case cited would be in point, and the children

of Gotthardt would be unable to plead the statute because the contract was fully executed.. The court, however, held that, although marriage furnished the inducement for the contract, the consideration for the conveyance of the land by the intended wife was the provision for the support and comfort of the wife, and not the marriage of the parties; but, in view of the undoubted complete execution of the contract by both parties, this holding must be considered obiter. And, moreover, the contrary has been held in the case of *Henry v. Henry,* 27 Ohio St. 121, where the question was squarely presented. See, also, *Dienst v. Dienst, supra,* and *Rowell v. Barber, supra.*

Plaintiff also cites in this connection, 21 Cyc. 1152, to the effect that a husband is under no legal obligation to support the children of his wife by a former marriage, which is undoubtedly correct, barring a great many exceptions, particularly in cases where the children live with their stepfather as a part of his family. Neither is the wife legally liable for the support of the husband's children. But we would be loath to conclude from such premises that a woman marrying a widower with minor children owed no duty of nurture and maternal advice to them. Plaintiff has cited us to no authority supporting such proposition, and we are pleased to say that our researches have revealed none. So long as the widowed with children are permitted to remarry, we think the doctrine contended for would be contrary to natural instincts and public policy. We are clearly of the opinion that the agreement of plaintiff's mother to care for and be a mother to the minor children of Gotthardt Fischer furnishes no good or valuable consideration for the contract; but, if it did, it was so connected with the contract of marriage as to make the contract an entirety, and so may be not considered an outside or independent consideration.

We have assumed that the contract in question is definite enough, and that the plaintiff has a right to sue

upon it as having been made for his benefit, and, in view of our conclusion upon the question of the statute of frauds, it will not be necessary to discuss other matters presented by the briefs.

We conclude that the contract sought to be enforced is void under the statute of frauds, and that the decree of the lower court is right, and it is

AFFIRMED.