MARY MALLETT, APPELLANT, V. AUGUSTA GRUNKE ET AL., APPELLEES.

FILED NOVEMBER 17, 1921.    No. 21696.

1. **Specific Performance:** MARRIAGE CONTRACT. On examination of entire case, *held* that the proofs tend to show an oral contract of marriage, and not a contract to act as housekeeper and to care for deceased as long as he lives, in consideration of his property.

2. **Statute of Frauds:** CONTRACT IN CONSIDERATION OF MARRIAGE. A contract in consideration of marriage is void, unless it, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith. Rev. St. 1913, sec. 2630.

APPEAL from the district court for Dodge county: A. M. POST, JUDGE. *Affirmed.*

*Montgomery, Hall & Young* and *Dolezal, Spear & Mapes,* for appellant.

*Cain & Johnson, contra.*

Heard before LETTON, DEAN and DAY, JJ., CORCORAN and GOSS, District Judges.

GOSS, District Judge.

This is an action in equity to enforce specific performance of an alleged oral contract between Mary Mallett,

the plaintiff, and Louis Kienbaum, now deceased, to give her care and companionship to him during his life, and, in consideration thereof, to receive all his estate upon his death. The plaintiff alleges performance on her part, and, deceased having failed to provide by will or other instrument for the conveyance of the property to her, brings this suit against his heirs and administrator. On the trial the court found for the defendants upon the issues joined.

Louis Kienbaum, a bachelor, 46 years old, lived until about 2 weeks before his death on his 240-acre farm about 4 miles southeast of the village of Snyder. He also owned 3 lots and a house in the village. About May 20, 1919, he expressed to Leroy Kleeman, one of his neighbors, his need of a housekeeper and cook, as they were on their way home from Omaha, where they had seen Mrs. Mallett, who is Kleeman's mother-in-law, whom he had previously met at Kleeman's home, and of whose cooking, at least, he had formed a favorable opinion; and he stated his intention of seeing what she would say to it. In August he told Kleeman that she was going to keep house for him. Kleeman expressed the belief that this arrangement would cause gossip, and others volunteered like opinions. His judgment approved the wisdom of the criticism, and his bashful nature readily responded to this commendable stimulus to enter upon the theretofore untried relation of marriage; and so Louis decided to see if she would not marry him. She consented, and arrangements were begun for her to sell her home in Omaha and move to Snyder, where he would build a good house on his lots. An architect and builder in Omaha, who had built Mrs. Mallett's house in Omaha, was consulted and plans were ordered for a house somewhat similar to hers. Some of her canned goods and other personal property were taken to Snyder by automobile, and late in September he and she made arrangements to be married on September 29. On Sunday, the 28th, they drove from Kleeman's home, where she had been visiting and where he

had been boarding for two weeks, to Omaha. He stopped at her house over night, and at an early hour of the morning called her and her daughter and stated that he was ill. He became unconscious, was taken to a hospital, and died on Thursday, October 2, 1919, without consummating the intended marriage.

If the contract was for the marriage of the parties, it was void under section 2630, Rev. St. 1913, which provides that every agreement, promise or undertaking made upon consideration of marriage shall be void, unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith.

The plaintiff was not permitted to testify, of course, her testimony being prohibited by the provisions of section 7894, Rev. St. 1913, on the grounds that she had a direct legal interest in the result of the action, and that in relating the transactions and conversations between herself and deceased she would be an adversary to the defendants as representatives of the deceased.

We are unusually impressed with the apparent honesty and truthfulness of all the witnesses and parties to the action. The vital question in the case is whether there was an agreement and part performance thereof between Mrs. Mallett and Louis Kienbaum that she should have his property in consideration of caring for him, as alleged; if, on the other hand, as the defendants claim, the agreement was one of marriage, then her cause of action was properly dismissed.

From a careful reading and analysis of the testimony given by the witnesses for the plaintiff alone, we have come to the conclusion that it is overwhelmingly shown that the agreement was an entirety, and that it contemplated marriage as its necessary and pivotal feature. It is true that early declarations of Louis Kienbaum were testified to, tending to show that he wanted to have her keep house and care for him, and that he would compensate her by building a house on his Snyder lots and giving her

the property, by giving her everything he had, by giving her his property, by leaving his property to her, by giving her some property, and the like. But it also appears from the evidence of these same witnesses that when, on his early expressions of his plan of having her as a housekeeper, the parties, and particularly Mrs. Kleeman and her husband, daughter and son-in-law of Mrs. Mallett, raised objection, he saw the force of it and expressed his intention of seeing if Mrs. Mallett would not marry him. We have no manner of doubt, from the entire circumstances indicated by the witnesses for plaintiff, that the minds of the parties never met, except as they met on this more or less platonic marriage agreement; and that both of them early recognized the wisdom of, and acted upon, the advice of their relatives and friends, to the effect that she must be more than cook and caretaker. In the latter weeks everything that was said and done by both of them looked toward marriage, and nothing that was at any time said or done by her or on her behalf ever looked in any other direction. If they ever had an agreement that she was to be his housekeeper, it was superseded by this oral marriage contract. This situation of plaintiff is not at all helped by the testimony of the witnesses for the defendants.

It would merely prolong our opinion, without profit to any one, to analyze in detail the evidence. Suffice it to say that, if defendants had offered no testimony, the trial judge would have had ample support in the testimony presented by plaintiff for dismissing the case.

Having decided that the agreement was one of marriage, and therefore void, it is unnecessary to consider the debated subject as to whether the plaintiff, by reason of the moving of a few of her domestic articles to Snyder, by her hospitality to Louis while overnight at her home in Omaha on his way to the altar, by her care of him in her home for a day after he was there stricken with his fatal illness, by her visit to him at the hospital, and by other merely natural and friendly acts, could be said to

have entered upon part performance of an agreement to be his housekeeper and to care for a 46-year-old man the rest of his life.

The decree of the district court was right, and it is

AFFIRMED.