[No. 16704.  *En Banc.*  June 22, 1922.]

FRED B. CAVANAUGH, *Appellant*, v. MARTIN L.
CAVANAUGH *et al., Respondents.*[1]

FRAUDS, STATUTE OF (18)—REAL PROPERTY—CONTRACT TO DEVISE—
EXECUTION OF WILL. A verbal contract to compensate a son for
services by the making of a will devising real estate, which was done,
is within the statute of frauds, where there was nothing in the will
nor any writing to show that it was made pursuant to the contract.

SAME (46)—CONTRACT TO DEVISE—PART PERFORMANCE. In such
a case, the mere making of the will is not such part performance as
to take the case out of the operation of the statute of frauds.

EQUITY (18)—CONTRACTS—PROPERTY RIGHTS—CONTRIBUTION BY
HEIRS. A contract between a man's children and heirs whereby one
of them was to attempt to make a settlement with the father, dis-
tributing his estate, which was liable to incur his enmity, and in
which the other heirs agreed, in such event, to reimburse such son ·
in case he was disinherited, will be enforced in equity as a valid
contract, upon its appearing that the son did incur the enmity of
his father, who destroyed a will made in such son's favor, and there-
upon divided his property among the other heirs; making, in effect,
a testamentary disposition thereof.

Appeal from a judgment of the superior court for
King county, Frater, J., entered December 18, 1920,
upon granting a nonsuit, dismissing an action for
equitable relief. Reversed.

*Karr & Gregory* and *H. G. Sutton,* for appellant.

*Poe & Falknor,* for respondents.

TOLMAN, J. — Appellant, who was plaintiff below,
seeks in this action to establish his right to receive,
upon the death of his father, the respondent Martin L.
Cavanaugh, who is still living, a certain share in the
property heretofore belonging to the latter. The other
individual respondents are the remaining surviving
children of Martin L. Cavanaugh, and the Title Trust

[1]Reported in 207 Pac. 657.

Company now holds title to the property in question in trust, as will more fully appear.

Demurrers to the complaint were overruled, issue was joined, and the case came on for trial on the merits. An opening statement was made by counsel, appellant was called as a witness in his own behalf, and after he had testified in chief as to his version of the facts up to the time of the making of the written agreement between the children of the elder Cavanaugh, hereinafter set out, the trial court reached the conclusion that the complaint, as modified by the opening statement and appellant's testimony, failed to state a present cause of action, and a judgment of dismissal without prejudice followed, from which this appeal is prosecuted.

The complaint, as modified by the testimony, seems to sufficiently charge the following facts:

That appellant, in 1895, at his father's request, went from Seattle to San Rafael, California, where the father was operating an hotel, and was there employed in and about his father's business for eight and one-half months, for which he received no compensation, and was not reimbursed for his expenses. The father promised him a half interest in the hotel, or wages, and repayment of his traveling expenses, but that the hotel was sold, the father receiving the purchase price, and the son receiving nothing whatever in payment for his services or as reimbursement for his expenses; that, in November, 1900, the father telegraphed the son to come immediately to Bradley, California, for the purpose of assisting him in drilling for oil, and that the son complied with that request and worked for his father at the oil well from November, 1900, to May, 1901; that the father promised him ten thousand shares of stock in payment for this service, but never delivered the stock, nor made any payment

for the services rendered. In the fall of 1901, appellant again worked at the oil well for his father, at the latter's request, continuing the service until the spring of 1902. What was said about compensation is testified to by the son, as follows:

"In March, 1902, the latter part of February or the fore part of March, I was sitting at the table in the oil camp playing the guitar, and Mr. Harvey was seated across the table, and Mr. Wallin, the driller, was at the other end of the table, and father got some paper and sat down at the table and was writing, and we paid no attention to him, and finally he said 'Boys, I have been doing some writing, and I want to read this to you.' And he read what he had been writing, and he had written out his will. . . .

"He asked Mr. Harvey and Mr. Wallin to witness his signature. He signed it in the presence of Mr. Wallin and Mr. Harvey and he said to me, he said, 'This will take the place of the agreement and will pay you well for your services at the hotel and for your services here.' "

And in the complaint it is alleged that, by this will, the father bequeathed to appellant three-fifteenths of his entire estate, and told appellant that, in consideration of the bequest, appellant would be expected to perform further services for him in looking after certain property interests in Seattle. After making the will (which it appears gave to each of the other children a share less than that given to appellant), according to appellant's testimony, it was understood that he was to return the following fall to the oil well and assist his father, which he did, and having married in the meantime, he took his wife with him and both worked for the father from December 1, 1902, until the spring of 1903, receiving no compensation and no reimbursement for expenses. Afterward, from the year 1906 to the year 1912, appellant looked after

certain business affairs in Seattle for the father, and loaned certain moneys for him, receiving nothing directly from the father; but upon his making complaint, the father informed him that he might charge a brokerage in making loans, thus covering his expenses and receiving compensation, and apparently this was done. It appears, however, that appellant's mother, the wife of Martin L. Cavanaugh, was interested in the Seattle property, it being the community property of herself and husband, and appellant's attention to the property was as much in the interest of his mother as of his father. The mother died in April, 1912, and the father shortly thereafter, being of the age of 74 years, contracted a second marriage, which proved unfortunate, and soon resulted in an action for divorce by the wife, in which she made claims which threatened serious inroads upon the elder Cavanaugh's fortune. Learning of this situation, all of the surviving children of Martin L. Cavanaugh entered into a written agreement as follows:

"Memorandum of Agreement

"This memorandum of agreement made and entered into this 25th day of November, 1912, A. D., by and between Fred B. Cavanaugh of Kent, Washington, herein designated the party of the first part, and Rose Mae Newell, Frank F. Cavanaugh, Emma J. Fulford, Mrs. Tabitha A. Card, and Alvira C. Mitchell, parties of the second part.

"Witnesseth: That whereas, M. L. Cavanaugh, the father of all the parties hereto, has recently contracted a marriage, and is at this time married and whereas, on account of said marriage all of the parties hereto believe it to be for the best interests of the heirs of M. L. Cavanaugh that some steps be taken at this time looking forward to a settlement between M. L. Cavanaugh and his lawful issue, and,

"Whereas, the parties of the second part have this day constituted and appointed Fred B. Cavanaugh

their sole representative to act for them in an attempt to settle their rights with M. L. Cavanaugh at this time, and

"Whereas, all the parties hereto realize that the said Fred B. Cavanaugh in arranging for such settlement is apt to incur the displeasure of the said M. L. Cavanaugh.

"Now Therefore, in consideration of the premises and other valuable consideration it is hereby mutually understood and agreed by and between the parties hereto: First, that in the event that Fred B. Cavanaugh shall attempt to make a settlement of the rights of the parties hereto with M. L. Cavanaugh, and for any reason fail, and by so doing be in any manner or form deprived of his full rights as an heir of M. L. Cavanaugh, and shall by so doing be in any manner disinherited by the said M. L. Cavanaugh, then and in that event the said parties of the second part hereby agree with Fred B. Cavanaugh that they and each of them shall contribute to the said Fred B. Cavanaugh from any portion of the property or property rights they shall receive from the settlement of the estate of M. L. Cavanaugh such property and property rights so that Fred B. Cavanaugh shall receive an amount equal to that of any of said parties of the second part, share and share alike.

"This agreement shall only be in force and effect in the event Fred B. Cavanaugh shall be, under the terms of the last will and testament of M. L. Cavanaugh, bequeathed an amount less than that received by the said parties of the second part, and under all other conditions and circumstances, this agreement shall be null and void.

"Dated this 25th day of November, 1912.
"(Signed)                    Fred B. Cavanaugh
                             "Frank F. Cavanaugh
                             "Rose M. Newell
                             "Elvira C. Mitchell
                             "Tabitha A. Card
                             "Emma J. Fulford."

It is further alleged that appellant, in accordance with the terms of the agreement, made an attempt

to secure a settlement with his father for himself and
his brother and sisters, in accordance with the terms
of the agreement; that he failed in his efforts, but
did thereby incur the displeasure of his father to
such an extent that the elder Cavanaugh revoked the
will which he had therefore made, repudiated his
agreement to provide by will for the services rendered
by appellant, and for the purpose of defeating ap-
pellant's rights under the agreement to devise, has,
without any consideration, conveyed all of his prop-
erty of every kind and nature to his children other
than appellant; that the father's action was induced
by the persuasions of the respondent children, who
acted therein with a fraudulent intent of avoiding the
agreement which we have set out. The allegations are
sufficient to make a charge of bad faith against all
of the respondents except the trust company, which,
it is alleged, now holds the property in trust for the
respondent children, or some of them. Appellant
prays that the respondents be ordered to submit an
inventory of all the property transferred to them by
Martin L. Cavanaugh, or held by them for Martin L.
Cavanaugh, and that a decree be entered to the effect
that whatever interest has been transferred or as-
signed by the elder Cavanaugh to the other respond-
ents herein be subject to a three-fifteenths interest
in appellant, being the interest alleged to have been
bequeathed to him in the will referred to, and that it
be further decreed that such three-fifteenths interest
is held in trust for the appellant, to be delivered to
him upon the death of the elder Cavanaugh, together
with a prayer for general relief.

The first question is whether the rendering of
services and the expenditure of money, as stated, upon
an agreement for payment in money or property for
which, after the services were rendered, was substi-

tuted an agreement to devise property by will, is such a consideration and part performance as will operate to prevent the later revocation of the will. It may be remarked in passing that the testimony fails to show the terms of the will; but since the plaintiff's case was not completed when the case was dismissed, we must assume that, had the trial proceeded, the proof would have been offered tending to show that the will, as charged in the complaint, was more favorable to appellant than to the other children of the testator.

In solving the question we are now considering, we must first inquire whether the promise was an oral one, void under the statute of frauds, or whether the execution of the will was such a writing as would avoid the statute. In *Swash v. Sharpstein,* 14 Wash. 426, 44 Pac. 862, 32 L. R. A. 796, where the promise to devise was held to be oral and under the ban of the statute, no will was in fact made, and this court expressly declined to pass upon the question as to whether the making of a will would or might have been sufficient to overcome the objection. *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041, is a case involving mutual wills, which were executed, but the wills failed to set forth the contract, if one there was, which would make them mutual in law, and thus irrevocable except by agreement or upon notice, and an oral mutual agreement to will, one to the other, was sought to be shown. After reviewing and discussing the authorities, this court there said:

"We conclude, therefore, that the contract relied upon by appellant as rendering the wills of July 3, 1909, irrevocable, other than by agreement or upon notice, is within the statute of frauds, and that it cannot be recognized by us as of any force unless evidenced in writing or partially performed so as to relieve it from the operation of the statute of frauds."

And it was further said:

"We are of the opinion that these wills do not, of themselves, prove the making of any contract of mutuality on the part of the testators, nor that one was made in consideration of the other, though upon their face they appear to have been simultaneously executed before the same witnesses and were, as the evidence shows, placed for safe keeping together in the hands of a third person. So far as any written evidence such as is required by the statute of frauds shows, these are individual wills of the simplest possible character, and there is no competent written evidence in this record tending to show that they were made in pursuance of any contract between the respective testators which would in the least impair their power of revocation."

This doctrine was reaffirmed in *McClanahan v. McClanahan*, 77 Wash. 138, 137 Pac. 479, Ann. Cas. 1915A 461, and is therefore the settled law of this state. Applying it to the case at bar, the will of the elder Cavanaugh, so far as appears from the allegations of the complaint, or the testimony of the appellant, contains no language which could be construed into a contract to devise in consideration of the services of the son, and such contract, if it existed, was oral, and therefore unenforceable. The property involved, as appears by the complaint, was, to a large extent, real estate, and we held, both in the *Swash* case and in the *Edwall* case, that the contract, being void as to the real estate because of the statute of frauds, cannot be enforced as to the personalty, for the reason that, being void in part, it is void as a whole.

Nor does it appear that there was sufficient part performance. The complaint charges that subsequent services in looking after the Seattle property were to be rendered, but the testimony shows that these services were by agreement to be compensated for by

a brokerage charge to borrowers, and, so far as appears, the son was fully compensated in that way for such services. It is not alleged in the complaint that further services were to be rendered in California, as a part of the consideration for the making of the will, and what little testimony there is upon that subject was at the best a mere conclusion of the witness and not the statement of any material fact. The mere making of the will was not a part performance. As we said in the *Edwall* case, *supra:*

"Some contention is made by counsel for appellant rested upon the theory of part performance on her part of the contract she relies upon. The record furnishes no evidence whatever of part performance, unless we regard the mere execution of the wills by both testators as performance. We do not think that the mere making of a will in pursuance of a contract required to be evidenced in writing by the statute of frauds, constitutes a part performance of such a contract so as to render the same enforceable."

This case is clearly distinguishable upon the facts from *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465, and *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572, upon which appellant relies. Nothing herein said is intended to in anywise modify or lessen the force of those cases.

These views tending to the conclusion that no right of action can be sustained upon the will at any time, render it unnecessary to discuss the question of whether, in any event, a right of action can be maintained while the testator is still living.

We come now to the consideration of the contract of November 25, 1912, between the surviving children of the elder Cavanaugh.

Starting with the contract and the allegations of the complaint, that, in bad faith, the children procured the father to convey all of his property to them for

the purpose of defeating the contract, and that the father, in bad faith, did so transfer all of his property for the purpose of precluding appellant's rights under the will, or otherwise, the question involved becomes comparatively simple. The contract was a proper and natural one under the circumstances disclosed; it is in nowise against public policy; on its face it is founded upon sufficient consideration, and its intent, spirit, and purpose are clearly evidenced by its terms, namely that appellant, by undertaking to act on behalf of all the brothers and sisters in an extremely delicate matter, should lose nothing in the event that he thereby incurred the father's displeasure. If necessary, in order to do equity, a broad interpretation should be given to the contract.

"That in the event that Fred B. Cavanaugh shall attempt to make a settlement of the rights of the parties hereto with M. L. Cavanaugh, and for any reason fail, and by so doing be in any manner or form deprived of his full rights as an heir of M. L. Cavanaugh, and shall by so doing be in any manner disinherited by the said M. L. Cavanaugh, then and in that event the said parties of the second part hereby agree with Fred B. Cavanaugh that they and each of them shall contribute to the said Fred B. Cavanaugh from any portion of the property or property rights they shall receive from the settlement of the estate of M. L. Cavanaugh such property and property rights so that Fred B. Cavanaugh shall receive an amount equal to that of any of said parties of the second part, share and share alike."

Clearly, in the case of the father, now at least in his eighty-fourth year, disposing of all of his property in the manner alleged, there can, in the nature of things, be no presumption that he will leave at his death as great an estate as he would have done had no such transfer been made, and hence appellant has, in some manner and to some extent, been disinherited,

or placed in a position where he must, in all human probability, be disinherited; and since the respondent children now have control of all the prpoperty formerly belonging to the father, with the legal right to dispose of it absolutely, so that there may be nothing left for the contract to operate upon after the father's death, equity will at least preserve appellant's rights until that time, which is, in brief, the prayer of the complaint. Moreover, leaving out the question of bad faith, the transfer of the property by the father to the children as alleged was undoubtedly testamentary in character, and, under the terms of the contract, it might very well be that, for that reason alone, equity should intervene to preserve appellant's rights.

We find no case exactly in point upon this question, but the elementary rules of equity applied to the facts pleaded render, we think, the citation of authority unnecessary.

The judgment appealed from is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

PARKER, C. J., HOLCOMB, MITCHELL, MAIN, MACKINTOSH, and BRIDGES, JJ., concur.

HOVEY, J., concurs in the result.