[Civil No. 2494.   Filed September 16, 1926.]

[249 Pac. 76.]

ANNA J. BROUGHT, Appellant, v. ELLA M. HOW-
ARD and JOE STRINKER, as Administrator
With the Will Annexed of the Estate of JONA-
THAN R. BROUGHT, Deceased, Appellees.

1. FRAUDS, STATUTE OF — SUBSEQUENT MARRIAGE OF PARTIES TO ORAL
   AGREEMENT TO MAKE MUTUAL WILLS IN CONSIDERATION OF MAR-
   RIAGE IS NOT PART PERFORMANCE WITHIN STATUTE (CIV. CODE
   1913, PAR. 3272, SUBDS. 3, 8).—Where plaintiff and decedent
   orally agreed to marry and that on death of either survivor
   should become owner of all their property, their subsequent marriage
   was not part performance taking agreement out of statute (Civ.
   Code 1913, par. 3272, subds. 3, 8).

2. FRAUDS, STATUTE OF—WILL NOT PURPORTING TO BE MADE PURSUANT
   TO ORAL AGREEMENT HELD NOT PART PERFORMANCE, UNDER STAT-
   UTE (CIV. CODE 1913, PAR. 3272, SUBD. 8).—Where plaintiff and
   testator orally agreed to marry and that on death of either sur-
   vivor should become owner of all their property, that testator
   made will leaving part of property to plaintiff, but not purporting
   to have been made pursuant to agreement, was not part perform-
   ance taking agreement out of statute (Civ. Code 1913, par. 3272,
   subd. 8).

3. FRAUDS, STATUTE OF—WILL NOT SHOWING INTENT TO DEVISE PUR-
   SUANT TO ORAL AGREEMENT WAS NOT MEMORANDUM WITHIN STAT-
   UTE (CIV. CODE 1913, PAR. 3272, SUBD. 8).—Where plaintiff and
   testator orally agreed that on death of either survivor should be-
   come owner of all their property, testator's will devising property
   to plaintiff was not sufficient as memorandum to take agreement
   out of Civil Code of 1913, paragraph 3272, subdivision 8; it not
   showing intent to devise pursuant to agreement.

4. FRAUDS, STATUTE OF.—Oral contracts within statute are not void,
   but unenforceable.

---

1.   What constitutes part performance sufficient to take agreement
in consideration of marriage out of operation of statute of frauds,
see note in 48 A. L. R. 1356. See, also, 12 Cal. Jur. 898; 25 R. C. L.
266, 451.

2.   Will as part performance, see note in 14 L. R. A. 863. See,
also, 12 Cal. Jur. 901; 25 R. C. L. 307. What is part performance,
see note in 53 Am. Dec. 539. See, also, 25 R. C. L. 260.

3.   See 25 Cal. Jur. 466; 25 R. C. L. 644.

4.   See 12 Cal. Jur. 921; 25 R. C. L. 691.

5. FRAUDS, STATUTE OF.—Where testator orally agreed with plaintiff to will all property to her but later devised part of property to defendant, defendant could plead statute in bar of suit to establish trust.

6. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR HELD NOT NECESSARY PARTY IN LITIGATION BETWEEN DEVISEES.—Administrator, joined as defendant in suit for specific performance of agreement to devise litigated between two devisees, not being interested, was not a necessary party and his failure to answer complaint or cross-complaint of another defendant was immaterial.

See (1) 27 C. J., p. 346, n. 27, 28.  (2, 3) 27 C. J., p. 259, n. 43, p. 347, n. 41.  (4) 27 C. J., p. 310, n. 4.  (5) 27 C. J., p. 209, n. 84 New, p. 308, n. 85 New.  (6) 24 C. J., p. 813, n. 22 New.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Messrs. Armstrong, Lewis & Kramer, for Appellant.

Messrs. Baughn & Walton, for Appellee Howard.

ROSS, J.—This is an equitable action to compel the specific performance of an alleged agreement between plaintiff and Jonathan R. Brought, now deceased, whereby it is claimed they agreed to marry and make their wills so that the one first to die should leave all of his or her property to the other.

It is claimed deceased violated his agreement by subsequently devising one piece of his property, to wit, lot 3 of block 15 of the city of Phoenix, to Ella M. Howard, and she is made a defendant for the purpose of impressing on her title a trust in favor of plaintiff.

The facts are that plaintiff and deceased were first married in 1903 and lived together as husband and wife until 1915, in which year they were divorced and

5.  See 25 R. C. L. 734.
6.  See 11 Cal. Jur. 1120.

their property, valued at about $25,000, was divided equally between them. This happened in May, 1915. They were an old couple and childless. Four months after they were divorced they agreed to remarry and upon the death of either the survivor should become the owner of all their property. In pursuance of such alleged agreement, they executed wills containing reciprocal provisions in favor of each other and quitclaim deeds from and to each other of their real property, and left them in charge of a third person to be delivered to the survivor. These instruments were executed on September 23, 1915, the day following the alleged oral agreement. They did not remarry until March 7, 1916. After the remarriage they lived together until Jonathan R. Brought died on August 23, 1924. The will devising lot 3 to Howard is dated July 6, 1920, and plaintiff knew nothing of it until it was offered for probate.

Both of the wills made by deceased have been probated, the plaintiff taking as devisee all of the property except lot 3, under the will of September 23, 1915, and defendant, Howard, taking as devisee lot 3, under the will of July 6, 1920.

The trial court concluded that the contract sued on was within the statute of frauds, and that sufficient performance upon the part of the plaintiff had not been shown to take it out of the statute; and, since we concur in this conclusion, we deem it unnecessary to state or discuss other points in the case except two which will be hereafter taken up and disposed of.

The agreement is stated in the complaint as follows:

"And each of them solemnly promised and agreed with each other to be reunited in marriage, and that upon the death of either, the survivor should become the owner of all property. . . . "

The only witness who testified to the agreement was the plaintiff. After explaining that the deceased had left at her home a note asking her to call at his place of business, she detailed the agreement as follows:

" 'Now,' he says, 'at our age, . . . I feel sorry that I have treated you the way I have, and I think that we had better make up our minds to make our wills to each other and remarry and try to live right.' And I said, 'Well, that just suits me, but, . . . Rufus, I thought the reason you wanted your divorce so badly was to marry Mrs. Howard.' And he said, 'Why no; I never expect to marry Mrs. Howard; . . . I wouldn't give your little finger for her whole body.' And I said, 'Well, if you mean that, Dad, I am perfectly willing to go and have our deeds made and our wills made.' And he said, 'Well, you meet me in Judge Armstrong's office to-morrow morning at ten o'clock, and we will have the papers fixed up.' Now that is word for word that passed between us."

The learned trial judge found the above testimony to be true and to constitute the agreement entered into between plaintiff and the deceased. Granting the absolute verity of this testimony, and that the court's discretion was properly exercised, under paragraph 1678 of the Civil Code, in its admission, it is very indefinite as to the subject matter agreed to be devised. At most, it evidences an agreement "to make our wills to each other" and to remarry. It does not sustain the contention that they agreed to will to each other all of their property. However, if it be granted that such testimony, when taken in connection with the making of the wills and deeds of conveyance, supports the plaintiff's contention that each was to will all his property to the other, it also shows conclusively that the contract to will was made upon the consideration of marriage. The agreement pleaded and proved is bilateral. When it was entered

into, the parties to it were unmarried; they were under no legal or moral obligations to each other; each owned his own separate property, free from the claim of the other; they were at liberty, being both single, to remarry again with or without an agreement as to the disposition of their separate estates. They chose to make it a condition of their contract of marriage that they would make wills devising their property to each other so that the survivor would have it all. It is implicit in the agreement that neither was to leave his property to the other unless they became husband and wife. It was as husband, if Jonathan R. Brought survived, that he was to take his wife's property and, *vice versa,* it was as survivor of the family that plaintiff would have all. The agreement negatives the thought of binding themselves to devise their property to each other unless they became husband and wife. They could have made a contract to leave their property to each other without re-establishing the marriage status, and in such case the agreement of the one would have been a sufficient consideration for the agreement of the other, but that was not what they did. The consideration for the agreement to make wills in favor of each other clearly was marriage.

There are some contracts under our statute of frauds that must be in writing and signed by the party to be charged, or by someone for him thereunto authorized. If not in writing and signed, no action can be brought on such contracts. However, the courts have refused to permit the statute of frauds to be taken advantage of as a bar to an action upon many of such contracts when the complaining party has shown performance on his part and that the legal remedies are inadequate to afford him justice. In other words, the statute may not be used to perpetrate a fraud if equity can prevent it.

In the present case the question is whether the claimed performance by the plaintiff is sufficient under the law, as found in the decisions to take the agreement out of the statute.

Our statute of frauds, paragraph 3272, enumerates eight different agreements that must be evidenced by a writing or a memorandum, and, if not so evidenced, it is provided that "no action shall be brought" thereon. The third one of these reads as follows: "Any agreement made upon consideration of marriage, except a mutual promise to marry." This provision is common to most of the statutes of frauds and is taken from the English statute, 29 Car. II, C-3 (1676). It has been passed upon many times by the courts and the holdings have been all but unanimous to the effect that if the only consideration of an agreement is marriage it must be reduced to writing and signed by the party to be charged. Subsequent marriage will not take such a contract out of the statute. The reason for this exception to the general rule is variously stated, but the clearest and fullest statement is found in *Hunt* v. *Hunt,* 171 N. Y. 396, 59 L. R. A. 306, 64 N. E. 159, wherein the court, after quoting the statute, said:

"The most notable feature of the statute above quoted is its simplicity and directness of language. All contracts founded upon consideration of marriage, except mutual promises to marry, shall be void unless the commands of the statute are obeyed. Mutual executory promises to marry are expressly excluded from its operation. All other contracts, founded upon consideration of marriage, are as clearly within its terms. These two divers provisions of the statute, standing in juxtaposition to each other, so plainly disclose the legislative intent as to render construction unnecessary if not impossible. The letter of the law bears its own interpretation. This view of the statute is not original. Pomeroy in his work on Contracts, under the head of 'Specific Performance' (2d Ed.) § 111, states it most forcibly as

follows: 'When a verbal contract is made in relation to, or upon the consideration of marriage, the marriage alone is not a part performance upon which to decree specific execution. This rule, which is firmly established, is based upon the express language of the statute. A promise made in anticipation of a marriage, followed by a marriage, is the exact case contemplated by the statute. It is plain that the marriage adds nothing to the very circumstances described by the statutory provision which makes a writing essential; in fact, until a marriage takes place, there is no binding agreement independent of the statute, so that the marriage itself is a necessary part of every agreement made upon consideration of it which the Legislature has said must be in writing.' Beach, in his Modern Equity Jurisprudence (section 622), says, 'It is well settled that marriage is not an act of part performance which will take a parol contract out of the statute; for the statute expressly provides that a contract in consideration of marriage shall not be binding unless it is in writing.' This is also the view of the statute entertained by the courts of England and the courts in other jurisdictions where the English statute of frauds has been copied."

See, also, *Watkins* v. *Watkins*, 82 N. J. Eq. 483, 89 Atl. 253; *White* v. *Bigelow*, 154 Mass. 593, 28 N. E. 904; *Hughes* v. *Hughes*, 49 Cal. App. 206, 193 Pac. 144; *Mallett* v. *Grunke*, 107 Neb. 173, 185 N. W. 310; *Fischer* v. *Fischer*, 106 Neb. 477, 21 A. L. R. 306, 184 N. W. 116; notes in 10 A. L. R. 321, and 21 A. L. R. 311.

If Jonathan R. Brought's agreement to make his will in favor of plaintiff was based upon any other consideration than marriage, the record fails to disclose it. Therefore, it is not necessary to discuss those cases wherein an additional consideration to marriage has been held to take the promise out of the statute. We cite some of such cases, however, with the remark that the facts here do not bring this case within the principle declared therein.

*London* v. *Anderson Brass Works,* 197 Ala. 16, 72 South. 359; *Riley* v. *Riley,* 25 Conn. 154; *Steen* v. *Kirkpatrick,* 84 Miss. 63, 36 South. 140; *Nowack* v. *Berger,* 133 Mo. 24, 54 Am. St. Rep. 663, 31 L. R. A. 810, 34 S. W. 489; *Larsen* v. *Johnson,* 78 Wis. 300, 23 Am. St. Rep. 404, 47 N. W. 615.

Subdivision 8, paragraph 3272, *supra,* provides that no action shall be brought upon "an agreement to devise or bequeath any property, or to make any provision for any person by will," unless the same be in writing and subscribed by the party to be charged or his agent. This provision was lifted bodily from the California laws. In *O'Brien* v. *O'Brien,* 197 Cal. 577, 241 Pac. 861, the court said:

"It must be taken as the settled law in this state that by the amendment of 1905, adding subdivision 7 to section 1624 of the Civil Code, and by the corresponding provision of subdivision 7 of section 1973 .of the Code of Civil Procedure as amended in 1907, 'an agreement . . . to devise or bequeath any property, or to make any provision for any person by will' is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged or his agent. Also it has been the law of this state, at least since the adoption of the Codes, that 'an agreement made upon consideration of marriage other than a mutual promise to marry' is invalid, unless likewise as provided by subdivision 3 in each of the sections above referred to.

"Prior to 1905 an oral contract to make a will was enforceable in a court of equity. *Owens* v. *McNally,* 113 Cal. 444, 33 L. R. A. 369, 45 Pac. 710; *McCabe* v. *Healy,* 138 Cal. 81, 70 Pac. 1008; *Rogers* v. *Schlotterback,* 167 Cal. 35, 138 Pac. 728; *Wolfsen* v. *Smyer,* 178 Cal. 775, 175 Pac. 10. The reason prompting the amendment of 1905 is aptly stated by the Code commissioner in his note appended to section 1624, as follows:

" 'The change consists in the addition of subdivision 7. The cases in which it (is) sought to estab-

30 Ariz.—34

lish by parol evidence alleged agreements to provide for a person by will are becoming so numerous as to warrant the assumption that the reasons inducing the original enactment of the statute of frauds apply with especial force to agreements of this class and that they ought to be brought within that statute.'

"Since that amendment, the effect of the new subdivision as applied to numerous and varying states of facts has been before the courts, but nowhere has it been decided, so far as we are advised, that the amendment should not be given the same force and effect as other provisions of the Statute of Frauds. Especially with reference to the new provision it has been held that neither subsequent marriage nor the execution of a will pursuant to an oral antenuptial agreement to make a will is such part performance as will relieve the contract from the operation of the statute. *Hughes* v. *Hughes,* 49 Cal. App. 206, 193 Pac. 144; *Trout* v. *Ogilvie,* 41 Cal. App. 167, 182 Pac. 333.''

The only other state having a similar provision is Massachusetts. Their provision is, ''No agreement to make a will of real or personal property or to give a legacy or make a devise shall be binding unless such agreement is in writing signed,'' etc. Rev. Laws, c. 74, § 6. In *Re Barlow* v. *Barlow,* 233 Mass. 468, 124 N. E. 285, the facts, though somewhat different from the facts here, are enough like the facts here to rule this case. We quote them as stated by Mr. Chief Justice RUGG:

''The material facts are that Albert Barlow, now deceased, in May, 1916, orally proposed marriage to the appellant, then Helen M. Burke, now his widow, promising that if she would marry him, 'he would make over everything to' her before the marriage, and that if he should die before marriage she would 'be taken care of,' and if he died after marriage she would 'have everything.' She accepted his proposal according to its terms. Pursuant to the agreement the deceased executed a will on May 29, 1916, whereby, after making two legacies of $5 each, the residue of his property was given to Helen M. Burke.

This will was mailed to her by the deceased on June 1, 1916, and she retained it until after his death in July, 1918, The marriage, which took place in August, 1916, was in consideration of his promise to make a will in her favor."

The decision in part is stated as follows:

"An agreement to make a will must be in writing in order to be valid. R. L., c. 74, § 6. The agreement in the case at bar was not in writing and hence no action can be maintained on it. . . . An agreement in consideration of marriage also is unenforceable unless in writing. . . . The plaintiff must fail on this ground."

See, also, *Young* v. *Young,* 251 Mass. 218, 146 N. E. 574.

The only two states (except Arizona) having the above provision have held that an agreement to make a will or to devise or bequeath property in consideration of marriage must be reduced to writing and signed, and that where it is not put into writing marriage is not sufficient part performance upon which to base a suit in equity for specific performance. *O'Brien* v. *O'Brien, Hughes* v. *Hughes, Barlow* v. *Barlow, supra.*

The rule doubtless would be the same under subdivision 8, whether the agreement be "in consideration of marriage" or "in contemplation of marriage"—a distinction sometimes attempted to be made.

Jonathan R. Brought's will in favor of plaintiff does not on its face purport to have been made in pursuance of any contract to make it. It merely indicates an intention to make a testamentary gift to the plaintiff. It is not a memorandum of any contract to will or devise. As is said in *Zellner* v. *Wassman,* 184 Cal. 80, 193 Pac. 84:

"The pre-eminent qualification of a memorandum under the statute of frauds is 'that it must contain

the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to parol evidence to show the intention of the parties.' 5 Browne on Statute of Frauds, sec. 371. Accordingly, it has been held in this state that an undelivered deed cannot be regarded as a sufficient memorandum of an oral agreement for the sale of land therein described when the deed is silent as to the terms of the alleged agreement and merely conveys the land from one party to another. *Swain* v. *Burnette,* 89 Cal. 564, 570, 26 Pac. 1093. In other jurisdictions the same reasoning has been applied to a will, for some reason ineffective upon the death of the testator, which makes no mention of the terms of the contract in pursuance of which it is alleged to have been executed. *Allen* v. *Bromberg,* 163 Ala. 620, 50 South. 884; *McClanahan* v. *McClanahan,* 77 Wash. 138, Ann. Cas. 1915A 461, 137 Pac. 479. A potential factor in furtherance of fraud would be engendered were a will containing a simple bequest permitted to operate as evidence of a binding contract to make such a bequest. It must therefore be held that there is no written memorandum of the agreement here in suit."

See, also, *Watkins* v. *Watkins, supra; Hale* v. *Hale,* 90 Va. 728, 19 S. E. 739; *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041; *Cavanaugh* v. *Cavanaugh,* 120 Wash. 487, 207 Pac. 657.

For the above reasons we conclude the plaintiff has failed to show herself entitled to the equitable relief sought, and the court did not err in so deciding.

It will be noted our statute of frauds does not provide that oral contracts within its terms are void, but simply that "no action shall be brought" on them. Under such statute, oral contracts are therefore not void, .but cannot be enforced or made the basis of an action for damages if the party sued raises the objection. In other words he may elect to stand by the contract and if so the court will enforce it, or he may elect to plead in bar the statute, in which case the suit must fail. The privilege of interposing

the statute as a defense is said to be personal to him and his privies. If, however, he has elected to rescind the contract, as where it is a contract to sell property by subsequently disposing of the property to another party, the latter may in a suit between himself and such contractee take advantage of the vendor's act of rescission. The rule is stated and the authorities supporting it cited, in *Gibson* v. *Stalnaker,* 87 W. Va. 710, 106 S. E. 243:

"However, although the contract still subsists, the vendor may elect to rescind and annul it and pass title to the subject-matter thereof to another not a party to or interested in the prior agreement. For when the owner lawfully may refuse to perform the contract, he may lawfully sell and convey to another, and by so doing repudiate the same. That the new grantee had notice of the prior verbal agreement creates no legal objection to the second conveyance, for there were no enforceable equities attaching under the former contract. *Van Cloostere* v. *Logan,* 149 Ill. 588, 36 N. E. 946; *Pickerell* v. *Morss,* 97 Ill. 220; *Asher* v. *Brock,* 95 Ky. 270, 24 S. W. 1070; 1 Williston on Contracts, § 529. He is protected by the statute to the same extent as his vendor."

See, also, 25 R. C. L. 734, § 383.

We hold, therefore, that the contention of the plaintiff that Howard as devisee could not plead the statute is without merit. A devise under the law is treated as a sale, the devisee being regarded as a purchaser. *Canada* v. *Ihmsen,* 33 Wyo. 439, 43 A. L. R. 1010, 240 Pac. 927.

The administrator did not file any answer to the complaint, and his default was duly entered. There is a question as to whether defendant's cross-complaint asking for affirmative relief was ever served on either the administrator or his attorney. He failed to answer such cross-complaint. Granting that plaintiff's contention is right, and that the administrator had no knowledge that defendant was

asking that her title be quieted as against him and plaintiff, we cannot see how the administrator's rights were injured. The real lawsuit was between the two devisees. If the subsequent will of July 6, 1920, had the effect of revoking the earlier will of September 23, 1915, so far as lot 3 was concerned, the title of said lot vested in Howard as devisee, subject to administration for the purpose of paying the testator's debts only. Plaintiff's theory of the whole case is that Howard got title under the last will and holds subject to her equities growing out of the contract sued on. The administrator was not a necessary party, as it was a matter of indifference to him which contender for lot 3 got it. One or the other was the owner and the question litigated was which one.

As was said in *Stewart* v. *Smith,* 6 Cal. App. 152, 91 Pac. 667—an action in equity to compel specific performance of a contract to make a certain testamentary disposition of property:

"The executor is not a necessary party to the action. All the devisees, legatees, and persons claiming an interest in the estate are made parties plaintiff and defendant, and, as the executor has no interest as such in the distribution of the estate, he is properly excluded from a contest over the right to a distribution of the whole or a part of it. *Estate of Wright,* 49 Cal. 550; *Jones* v. *Lamont,* 118 Cal. 499, 62 Am. St. Rep. 251, 50 Pac. 766; *Estate of Healy,* 137 Cal. 474, 70 Pac. 455."

The judgment entered quieted defendant's title to lot 3, "except in so far as the same may be necessary to satisfy the debts of the estate of the deceased Jonathan R. Brought as may be adjudged by the probate court in the administration of said estate." It seems to us the judgment left with the administrator all that he could properly have claimed, even though he had appeared and filed an answer to the cross-complaint. We think the administrator

very properly viewed the contest as between the two contending devisees, and for that reason answered neither the complaint nor the cross-complaint.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.